[673 NYS2d 783]

In the Matter of DAILY GAZETTE COMPANY et al., Appellants, v
CITY OF SCHENECTADY et al., Respondents.

Third Department, June 4, 1998

## APPEARANCES OF COUNSEL

*Nixon, Hargrave, Devans & Doyle,* Albany (*Andrew C. Rose*
of counsel), for Daily Gazette Company, appellant.

*McNamee, Lochner, Titus & Williams,* Albany (*Michael J.
Grygiel* of counsel), for Capital Newspapers Division of the
Hearst Corporation, appellant.

*L. John Van Norden, Corporation Counsel* of City of Schenectady, for respondents.

*Grasso & Grasso,* Schenectady (*Jane K. Finin* of counsel), for Schenectady Police Benevolent Association, *amicus curiae.*

**OPINION OF THE COURT**

SPAIN, J.

In the early morning hours of May 11, 1997, 18 off-duty police officers employed by respondent City of Schenectady in Schenectady County were among the passengers on a bus chartered for a police officer's bachelor party. During their tour of local night spots a number of passengers on the bus, including some of the Schenectady policemen, got into a fracas with the occupants of an automobile during which eggs were thrown from the bus at the automobile and at one of the occupants of the automobile. Subsequently, the persons in the automobile complained to the Schenectady Police Department; however, requesting that their identities remain anonymous, they indicated that they did not want to press formal charges. Apparently they were satisfied with the police officers' payment of the costs associated with the damages arising out of the incident and the Police Chief's assurance of departmental discipline. Thereafter, the Police Chief promised not to reveal the names of any police officers who admitted their involvement in the incident, agreed to make restitution and accept departmental discipline. Eventually, all 18 police officers came forward and were punished, without objection, according to the degree of their involvement; the punishments reportedly range from written reprimands to lost vacation days, lost overtime pay, fines and technical suspensions. Petitioners, Daily Gazette Company (hereinafter The Gazette) and Capital Newspapers Division of the Hearst Corporation (hereinafter The Times Union), published newspaper articles reporting the incident. In addition, they each filed a Freedom of Information Law (Public Officers Law art 6 [hereinafter FOIL]) request with the Police Chief ultimately seeking only the identities of the police officers involved and their respective punishments.

On May 28, 1997, respondent Mayor of Schenectady issued a press release regarding the FOIL requests. The release stated that although the Mayor's personal inclination was to disclose the police officers' names, he chose not to do so at such time due to the confidentiality claim being raised by the Schenectady Police Benevolent Association (hereinafter PBA), the police officers' union. The next day, deeming the FOIL requests to have

been formally filed, respondent City Records Officer denied them citing, *inter alia*, "the possible breach of confidentiality which may attach to the personnel records of police officers under [Civil Rights Law § 50-a]". Petitioners each appealed this decision to the Mayor (*see*, Public Officers Law § 89 [4] [a]), who denied the appeals on the basis of, *inter alia*, Civil Rights Law § 50-a.

Petitioners then commenced the instant CPLR article 78 proceeding seeking a writ of prohibition and mandamus vacating and prohibiting enforcement of the decisions by the City Records Officer and the Mayor (*see*, Public Officers Law § 89 [4] [b]), as well as seeking counsel fees and costs (*see*, Public Officers Law § 89 [4] [c]). In part, petitioners relied on an advisory opinion they each requested from the State Committee on Open Government (hereinafter the Committee) (*see*, Public Officers Law § 89 [1] [a], [b] [ii]), which recommended FOIL disclosure of the police officers' identities and the penalties imposed. Supreme Court granted petitioners' motion to consolidate and join the proceedings and determined, *inter alia*, that the requested information was afforded specific protection from disclosure under FOIL by Civil Rights Law § 50-a (*see*, Public Officers Law § 87 [2] [a]). In denying the petitions, Supreme Court cited the Court of Appeals decision in *Matter of Prisoners' Legal Servs. v New York State Dept. of Correctional Servs.* (73 NY2d 26) as its basis for holding that courts were "powerless" to change the "almost impenetrable cloak of secrecy" afforded police officers by Civil Rights Law § 50-a. Petitioners appeal.[1]

The question on review distills to whether Supreme Court appropriately found respondents to have satisfied their burden of proving that the requested information was exempt from FOIL disclosure (*see*, *Matter of Farbman & Sons v New York City Health & Hosps. Corp.*, 62 NY2d 75, 82; *Matter of Capital Newspapers Div. v Burns*, 109 AD2d 92, 93, *affd* 67 NY2d 562; *see also*, Public Officers Law § 89 [4] [b]). In our view, Supreme Court erred in misconstruing the holding in *Prisoners' Legal Servs.* and, therefore, we reverse. Government records are presumptively subject to disclosure unless, *inter alia*, specifically exempt by statute (Public Officers Law § 87 [2] [a]; *see*, *Matter of Hanig v State of N. Y. Dept. of Motor Vehicles*, 79 NY2d 106, 109; *Matter of Scott, Sardano & Pomeranz v Records Access Officer of City of Syracuse*, 65 NY2d 294, 296-297)

---

**1.** The PBA was granted permission by this Court to file and has filed an *amicus curiae* brief on behalf of the 18 police officers.

and exemptions under FOIL "are to be narrowly construed" (*Matter of Capital Newspapers Div. v Burns*, 67 NY2d 562, 566; *see, Matter of Fink v Lefkowitz*, 47 NY2d 567, 571). The agency denying access must demonstrate "that the requested material falls squarely within a FOIL exemption by articulating a particularized and specific justification" (*Matter of Capital Newspapers Div. v Burns, supra*, at 566; *see,* Public Officers Law § 89 [4] [b]; *Matter of Russo v Nassau County Community Coll.*, 81 NY2d 690, 700; *Matter of Fink v Lefkowitz, supra*, at 571). The statutory exemption under FOIL which respondents relied upon provides, in pertinent part, that personnel records of police officers, correction officers and firefighters "used to evaluate performance toward continued employment or promotion * * * shall be considered confidential and not subject to inspection or review" (Civil Rights Law § 50-a [1]).

In the instant case, Supreme Court cites the Court of Appeals ruling in *Prisoners' Legal Servs.* and concludes as follows: "While it appears to this Court that police officers, firefighters and correction officers, unlike other public employees, are afforded an almost impenetrable cloak of secrecy by Section 50-a, if the information related to on or off the job misconduct is placed in their personnel records, the Courts are powerless to change it. If change is appropriate, it is the exclusive province of the State Legislature." At the time of its decision in *Prisoners' Legal Servs.*, the Court of Appeals had previously explored the legislative history behind Civil Rights Law § 50-a and held that the statute does not create a blanket exemption from FOIL disclosure to police personnel records; rather, the Court found that it was enacted to prevent " 'vexatious' " use of the contents of such records in the context of civil or criminal litigation (*Matter of Capital Newspapers Div. v Burns, supra*, at 569).

Here, petitioners do not appear to seriously challenge the fact that the information sought is contained in the police officers' personnel records (*see,* Civil Rights Law § 50-a [1]);[2] nor do they challenge the fact that the information they seek could be

---

**2.** According to *Prisoners' Legal Servs.*, the kind of information sought herein comes under the broad definition of "personnel records". Notably, the central issue in *Prisoners' Legal Servs.* was whether inmate grievances against correction officers and the administrative decisions relating thereto are considered personnel records within the meaning of Civil Rights Law § 50-a (1), even when such documents may not have been stored within a correction officer's personnel file folder. The Court held that whether a document qualifies as a personnel record "depends upon its nature and its use in evaluating an officer's performance—not its physical location" (*Matter of*

used to evaluate the performance of the police officers for employment and promotion purposes (*see*, Civil Rights Law § 50-a [1]). They argue, however, that as long as their FOIL requests have not been made in the context of litigation or potential litigation the requested information is not exempt from disclosure under Civil Rights Law § 50-a. This litigation/ nonlitigation distinction was recognized and indeed endorsed in *Prisoners' Legal Servs.* where, although Civil Rights Law § 50-a was invoked to support the denial of disclosure, the grievance records at issue were being sought by a prisoners' advocacy organization whose role was to investigate and likely pursue legal proceedings against errant correction officers.

Clearly, the purpose of the information request in *Prisoners' Legal Servs.* was potentially adversarial or litigious in nature. However, the Court of Appeals was careful to contrast that scenario with one where, as here and in *Matter of Capital Newspapers Div. v Burns* (*supra*), the media is merely seeking the information to report as news and not with even a remote view toward any litigation. In making a key distinction between the request in *Capital Newspapers* and the FOIL request before it in *Prisoners' Legal Servs.*, the Court of Appeals, referring to its holding in *Capital Newspapers*, states: "we by no means suggested that the application of [§ 50-a] was limited to an ongoing litigation. Rather, we simply recognized that the legislative intent in enacting the [correction officer] amendment to section 50-a was to prevent release of sensitive personnel records that could be used in litigation for the purpose of harassing or embarrassing correction officers * * * records having remote or no such potential use, like those sought in *Capital Newspapers*, fall outside the scope of the statute" (*Matter of Prisoners' Legal Servs. v New York State Dept. of Correctional Servs., supra*, at 33 [citation omitted]).

The use or potential use in litigation remains a critical factor in assessing Civil Rights Law § 50-a protection as evidenced in other cases ordering disclosure. For example, in a pre-*Prisoners' Legal Servs.* decision, this Court permitted access to a disciplinary determination action against a police investigator, citing *Capital Newspapers* and stating that the protection afforded under Civil Rights Law § 50-a "is only intended to prevent access to police personnel records * * * for purposes of harassment of the police on cross-examination or otherwise in the context of a civil or criminal action" (*Matter of Scaccia v*

*Prisoners' Legal Servs. v New York State Dept. of Correctional Servs., supra,* at 32).

*New York State Div. of State Police*, 138 AD2d 50, 54). Similarly, a post-*Prisoners' Legal Servs.* decision in Supreme Court, Oneida County, ordered disclosure of the final determination of a firefighter's suspension hearing to a local newspaper, citing *Capital Newspapers* and specifically rejecting the notion that Civil Rights Law § 50-a (1) prohibited its release, concluding: "the court finds that in this *nonlitigation context*, [petitioner newspaper] is entitled to disclosure of the final determination in this fireman's suspension hearing, without disclosing all the supporting allegations, complaints or witness names" (*Matter of Rome Sentinel Co. v City of Rome*, 145 Misc 2d 183, 186; *see*, *Matter of Powhida v City of Albany*, 147 AD2d 236, 238-239).

Notably, the litigation/nonlitigation distinction is no less prominent in the two recent decisions of this Court which Supreme Court, in the instant case, also relied upon in support of its denial of access. In each of those cases, there was an obvious litigation purpose for the information being sought under FOIL. In *Matter of Ruberti, Girvin & Ferlazzo v New York State Div. of State Police* (218 AD2d 494), a law firm representing female members of the State Police sought materials related to police promotional processes with an eye toward pursing gender-based discrimination lawsuits on behalf of its clients. Acknowledging that FOIL requests for records having remote or no such potential use will fall outside the scope of Civil Rights Law § 50-a, we observed that the law firm's FOIL request justified the invocation of section 50-a "[a]s the information sought plainly relates to the claims of gender discrimination made by petitioner's clients, it cannot be said that the requested documents would have little or no potential use in any lawsuit commenced against respondent or any of its members on that ground" (*Matter of Ruberti, Girvin & Ferlazzo v New York State Div. of State Police*, 218 AD2d 494, 498). Similarly, the obvious prospect of litigation or adversarial use of FOIL information was a key factor in upholding the denial of access under Civil Rights Law § 50-a where an inmate at a correctional facility sought information under FOIL for records concerning "an internal investigation conducted by the State Police into alleged police misconduct related to petitioner's arrest" (*Matter of Ferrara v Superintendent, N. Y. State Police*, 235 AD2d 874, 874-875, *lv denied* 90 NY2d 829).

In our view, *Prisoners' Legal Servs.* did not broaden the scope of the Civil Rights Law § 50-a exemption to include FOIL requests made in a context unrelated to litigation. Accordingly,

respondents have failed to demonstrate that the information requested by petitioners comes squarely within the Civil Rights Law § 50-a FOIL exemption because they have not established, in any convincing way, that the information sought would be used in existing or potential litigation. The names of the police officers involved and the respective discipline imposed must be released to petitioners.

As to the issue of counsel fees and other litigation costs reasonably incurred, this matter should be remitted to Supreme Court for further proceedings pursuant to Public Officers Law § 89 (4) (c) (see, Matter of Powhida v City of Albany, 147 AD2d 236, 238-239, supra).

In light of our foregoing decision, we need not address petitioners' remaining contentions.

PETERS, J. (dissenting). Since the majority's authorization for disclosure appears solely premised on the "context" in which the request is made and whether, emanating from that context, there is a threat of litigation or potential litigation, we believe that it has misconstrued Matter of Prisoners' Legal Servs. v New York State Dept. of Correctional Servs. (73 NY2d 26) and incorrectly ordered disclosure.

Throughout the Court of Appeals decision in Prisoners' Legal Servs., it is emphasized that "[d]ocuments pertaining to misconduct or rules violations * * * are the very sort of record which, the legislative history reveals, was intended to be kept confidential" (id., at 31). In discussing the underpinnings of this legislation, the Court noted the litigation/nonlitigation distinction and explained that "records may be protected from disclosure under [Civil Rights Law §] 50-a, even though not sought for actual litigation" (id., at 32). If pending litigation were necessary before receiving statutory protection, the Court countered that "the statute could be circumvented by the simple expedient of making FOIL requests for the records first and bringing the lawsuit later. The Legislature could not have intended to enact a statute that could so easily be rendered ineffectual" (id., at 33).

Finding later interpretation of its decision in Matter of Capital Newspapers Div. v Burns (67 NY2d 562) misguided, the Court of Appeals clarified that the request made therein by a newspaper for FOIL access to attendance and sick leave records of correction officers was permitted because those materials "did not constitute the kind of personnel records protected under section 50-a" (Matter of Prisoners' Legal Servs. v New

*York State Dept. of Correctional Servs.*, *supra*, at 33), not because statutory protection was limited to pending litigation. It was because these records had no remote or even potential use in litigation for the purposes of harassment or embarrassment of the correction officers at issue (*see, Matter of Capital Newspapers Div. v Burns*, *supra*, at 568-569) that disclosure was permitted.

For these reasons, we disagree with the majority's construction of *Prisoners' Legal Servs.* We find that the Court of Appeals, in construing Civil Rights Law § 50-a (1), held that the statute included, within its scope, all sensitive personnel documents that could have *potential* use in litigation for the purpose of harassment or embarrassment, regardless of the context in which the request was made. To conclude that the documents sought here fall outside of that scope based solely upon the litigation/nonlitigation context in which the request was made lifts the cloak of secrecy afforded by statute and usurps legislative function.

In light of the policy enunciated by the Legislature in enacting this statute, coupled with the Court of Appeals interpretation thereof, we are constrained to conclude that disclosure is prohibited. Accordingly, we would affirm the judgment of Supreme Court which denied disclosure of the requested materials under FOIL pursuant to Civil Rights Law § 50-a (*see*, Public Officers Law § 87 [2] [a]).

MERCURE, J. P., and WHITE, J., concur with SPAIN, J.; PETERS and CARPINELLO, JJ., dissent in a separate opinion by PETERS, J.

Ordered that the judgment is modified, on the law, with one bill of costs to petitioners, by partially granting the petition and directing respondents to release to petitioners the names of the police officers involved in the incident of May 11, 1997 and the respective discipline imposed; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.