OPINION OF THE COURT
 

 Levine, J.
 

 The City of Schenectady appeals as of right, upon a two-
 
 *152
 
 Justice dissent (CPLR 5601 [a]), from the order of the Appellate Division (242 AD2d 164) requiring it to turn over to petitioners Schenectady Police Department records regarding disciplinary action against 18 officers, pursuant to the State’s Freedom of Information Law (FOIL) (Public Officers Law, art 6, §§ 84-90). Petitioners are two newspapers covering Schenectady and the greater Capital District, the Daily Gazette and Capital Newspapers Division of the Hearst Corporation.
 

 The FOIL requests followed news reports that, in the late evening of May 11, 1997, a chartered bus load of off-duty law enforcement officers, celebrating a police officer’s bachelor party, became involved in a confrontation with two civilians in an automobile. During the incident, the bus occupants reportedly pelted the civilians’ vehicle with raw eggs. The Schenectady police chief confirmed that the egg-throwing incident had occurred, that, under a promise of confidentiality, 18 Schenectady police officers had admitted their participation in the incident in various degrees, and that disciplinary sanctions were imposed ranging from written reprimands to loss of vacation days and overtime pay. News articles additionally reported that the officers had agreed to pay the owner of the automobile for the cost of repairs of damage sustained in the incident.
 

 When the Police Department refused to furnish petitioners additional information concerning the disciplinary action, they filed FOIL requests seeking, respectively, “all documents related to disciplinary actions,” or the identities of the sanctioned officers and the specific punishment imposed upon each. These requests were rejected by the City’s records officer, and that determination was upheld on administrative appeal to the Mayor of the City.
 

 Petitioners then brought these proceedings in Supreme Court to compel disclosure. Supreme Court rejected all the grounds for nondisclosure advanced by the City other than the FOIL exception for records that “are specifically exempted from disclosure by state or federal statute” (Public Officers Law § 87 [2] [a]). The court concluded that these records were specifically exempted under Civil Rights Law § 50-a. The first subdivision of that section provides:
 

 “All personnel records, used to evaluate performance toward continued employment or promotion [of police officers, correction officers or firefighters] * * * shall be considered confidential and not subject to inspection or review without the express
 
 *153
 
 written consent of such [officers] * * * except as may be mandated by lawful court order.”
 

 Subdivisions (2) and (3) of section 50-a set forth a procedure to obtain a court order of disclosure, giving any interested party an opportunity to be heard. Subdivision (4) exempts from the confidentiality of such records a disclosure to the Attorney-General, a District Attorney or County, Town or Village Attorney, a Grand Jury and any governmental agency requiring records “in the furtherance of their official functions.”
 

 The Appellate Division reversed, concluding that the records of the disciplinary actions taken against the 18 officers, albeit part of their personnel files and pertinent to evaluate the officers regarding continued employment or promotion, were nevertheless not exempt from FOIL disclosure under Civil Rights Law § 50-a.
 

 On the City’s appeal from the reversal of Supreme Court’s determination, petitioners essentially reiterate their successful position before the Appellate Division. They read our decisions in
 
 Matter of Capital Newspapers v Burns
 
 (67 NY2d 562) and
 
 Matter of Prisoners’ Legal Servs. v New York State Dept. of Correctional Servs.
 
 (73 NY2d 26) as strictly limiting the Civil Rights Law § 50-a exemption from FOIL disclosure to a request made in the context of actual or potential litigation. Petitioners’ test for nondisclosure is whether, in the context of the particular request for access to the records, the information contained therein is likely to be used in some pending or then actually anticipated litigation. They claim that this narrow litigation context is absent here because they are newspapers whose purpose is not to use the records in a legal proceeding, but to provide newsworthy information to the general public, and because any claim on behalf of the injured parties in the egg-throwing incident is now time-barred. Thus, they assert that their uncontradicted affidavits disclaiming any intent to bring a lawsuit against the officers should be conclusive for their unimpeded right of access to the disciplinary information contained in the officers’ personnel records.
 

 In our view, petitioners’ exceedingly narrow interpretation of the Civil Rights Law § 50-a bar to FOIL disclosure conflicts with the plain wording of the statute, is contrary to its legislative history and is inconsistent with our FOIL precedents. It would undermine the paramount objectives of the Legislature in enacting section 50-a.
 

 First, the literal language of the statute is inconsistent with petitioners’ position that access to police and correction
 
 *154
 
 officers’ and firefighters’ personnel records by a simple FOIL request turns on the status and purpose of the person seeking the records. Civil Rights Law § 50-a unambiguously defines the records that are immune from indiscriminate disclosure. It then sets up a legal process whereby the confidentiality of the records may be lifted by a court, but only after an in camera inspection and affording affected parties notice and an opportunity to be heard. Notably, the statute does indeed provide for some exemption from confidentiality of an officer’s personnel records based on the status and purpose of the one desiring disclosure. However, rather than fashioning some general exemption from confidentiality based on the distinction urged by petitioners, section 50-a specifically limits any purpose/ status distinctions governing the right to disclosure on request, as we have already noted, to public prosecutors and other law officials and governmental agencies seeking access for the
 
 purpose
 
 of “further[ing] * * * their official functions.” As a policy choice, undisputably within its constitutional prerogatives which we are constrained to respect, the Legislature elected to shield the personnel records of these officers from disclosure upon request with only a strictly limited status/ purpose exception. The Legislature did not choose to include news-gathering organizations within the statutorily exempted class entitled to automatic access, despite their important role in fulfilling the public interest in open government.
 

 The legislative history of Civil Rights Law § 50-a, as originally adopted and later amended, likewise simply cannot be read to support petitioners’ construction of its limited reach and application in connection with a FOIL request — i.e., that derogatory and potentially injurious information in an officer’s personnel records may .lose its statutory shield of confidentiality and unqualifiedly become public knowledge if the entity seeking FOIL access is a news-gathering organization that is not contemplating suit. Section 50-a was first enacted into law (L 1976, ch 413) some two years after passage of the original FOIL legislation (L 1974, ch 578) granting public access to the kinds of records sought here. The Legislature was well aware of the use of FOIL to obtain such records.
 

 The statute was designed to prevent abusive exploitation of personally damaging information contained in officers’ personnel records — perhaps most often in connection with a criminal defense attorney’s FOIL application for purposes of general cross-examination of a police witness in a criminal prosecution. Undeniably from the legislative record, however, the legisla
 
 *155
 
 tive objective went beyond precluding disclosure on behalf of defendants in pending criminal cases
 
 (see,
 
 Mem of Senator Padavan and Member of Assembly DeSalvio, Mem of Div of Criminal Justice Servs, Mem of Div of Budget and Mem of Div of State Police, Bill Jacket, L 1976, ch 413). The legislative purpose was to prevent disclosure of officers’ personnel records except when a legitimate need for them has been demonstrated sufficiently to obtain a court order, generally upon a showing that they are actually relevant to an issue in a pending proceeding
 
 (id.).
 
 The original legislation was sponsored and passed as a safeguard against potential harassment of officers through unlimited access to information contained in personnel files. “It has become a matter of harassment of police officers that personnel records be constantly requested, scrutinized, reviewed and
 
 commented upon, sometimes publicly”
 
 (Mem of Police Conference of New York, Bill Jacket, L 1976, ch 413 [emphasis supplied]).
 

 The legislative history also amply demonstrates awareness that Civil Rights Law § 50-a as initially enacted would have the effect of insulating the kind of disciplinary records sought here from disclosure upon mere request. Thus, the Memorandum of the Division of the Budget described the sponsors’ and supporters’ position that the bill was necessary to prevent police witnesses from being discredited by confrontation with irrelevant “complaints,
 
 disciplinary proceedings
 
 or
 
 reprimands
 
 filed against them
 
 in the past”
 
 (Mem of Div of Budget, Bill Jacket, L 1976, ch 413 [emphasis supplied]). Moreover, it was recognized that the legislation would have some restrictive impact on open public access such as petitioners are requesting here. Thus, opposition to the bill was expressed on the ground that the needs to prevent oppressive use of police personnel records “do not offset the benefits of assuring the availability to the public of the performance evaluation of its servants” (Mem of Special Deputy Atty-Gen Joseph P. Hoey, Special Prosecutor Suffolk County, Bill Jacket, L 1976, ch 413).
 

 Certainly, later amendments underscore that confidentiality of officers’ personnel records was intended to go well beyond merely shielding them from abusive use in an actual litigation context. The legislative history of the 1981 amendment to section 50-a, adding correction officers to the protected class, declared that the described abuses of personnel information it was designed to prevent included “harassment or reprisals” against an officer (Mem of Senator Marino and Member of Assembly Kremer, Bill Jacket, L 1981, ch 778) or “his/her family” (Mem of Div of Budget, Bill Jacket, L 1981, ch 778).
 

 
 *156
 
 Petitioner’s construction of the FOIL exemption at issue also conflicts with our FOIL precedents. As this case illustrates, petitioners’ construction of the scope of section 50-a would make the disposition of a FOIL request for officers’ or firefighters’ personnel records turn on the identity, status and purpose of the person requesting access. Our prior FOIL decisions have consistently rejected the purpose or status of the person making the FOIL request as a factor of critical significance in applying FOIL exemptions. Thus,
 
 Matter of Capital Newspapers v Burns (supra),
 
 heavily relied upon by petitioners, itself affirms that “the status or need of the person seeking access is generally of no consequence in construing FOIL
 
 and its
 
 exemptions”
 
 (id.,
 
 67 NY2d, at 567 [emphasis supplied]).
 

 An agency’s inquiry into, or reliance upon the status and motive of a FOIL applicant would be administratively infeasible, and its intrusiveness would conflict with the remedial purposes of FOIL
 
 (see, Matter of Farbman & Sons v New York City Health & Hosps. Corp.,
 
 62 NY2d 75, 80 [“FOIL does not require that the party requesting records make any showing of need, good faith or legitimate purpose”];
 
 see also, Matter of Scott, Sardano & Pomeranz v Records Access Officers of City of Syracuse,
 
 65 NY2d 294, 297 [“entitlement to the requested * * * reports is not contingent upon the showing of some cognizable interest other than that inhering in being a member of the public”]).
 

 Matter of Prisoners’ Legal Servs. (supra),
 
 our other major precedent on the interplay between Civil Rights Law § 50-a and FOIL, also eschews reliance on the litigious purpose of, or anticipated use in a lawsuit by, the person seeking access to the personnel records. There we recognized that a legislative objective of Civil Rights Law § 50-a was to protect correction officers “from the use of records * * * as a means for harassment and reprisals” (73 NY2d, at 31). We then held:
 

 “Contrary to the dissent, the conclusion that records may be protected from disclosure under section 50-a,
 
 even though not sought for actual litigation,
 
 is entirely consistent with the statutory scheme”
 
 (id.,
 
 at 32 [emphasis supplied]).
 

 Repeatedly, in
 
 Matter of Prisoners’ Legal Servs.,
 
 we recognized that the decisive factor in determining whether an officer’s personnel record was exempted from FOIL disclosure under Civil Rights Law § 50-a was the potential
 
 use
 
 of the information contained therein, not the specific purpose of the
 
 *157
 
 particular individual requesting access, nor whether the request was actually made in contemplation of litigation.
 

 “Documents pertaining to misconduct or rules violations by corrections officers — which
 
 could well be used in various ways against the officers
 
 — are the very sort of record which * * * was intended to be kept confidential. * * * The legislative purpose underlying section 50-a * * * was * * * to protect the officers from the
 
 use
 
 of records * *
 
 *
 
 as a means for harassment and reprisals and for the purposes of cross-examination” (73 NY2d, at 31 [emphasis supplied]).
 

 “The construction petitioner urges seems inimical to the very statutory purpose of preventing the
 
 use
 
 of personnel records as a device for harassing or embarrassing police and correction officers”
 
 (id.,
 
 at 32 [emphasis supplied]).
 

 “[T]he legislative intent * * * was to prevent release of sensitive personnel records that
 
 could be used
 
 in litigation for the purpose of harassing or embarrassing correction officers”
 
 (id.,
 
 at 33 [emphasis supplied]).
 

 Matter of Prisoners’ Legal Servs.,
 
 and
 
 Matter of Capital Newspapers v Burns (supra)
 
 point to the appropriate criteria for the disposition of petitioners’ FOIL request for full access to the disciplinary information on the egg-throwing incident contained in the 18 officers’ personnel records. On the one hand, to prevent FOIL disclosure of officers’ personnel records, it is not sufficient merely to demonstrate that the recorded data may be “used to evaluate performance toward continued employment or promotion” of the officers — literally the sole standard for confidentiality set forth in Civil Rights Law § 50-a. That comprehensive statutory exemption must be tempered when it interacts with the competing, equally strong legislative policy of open government through broad public access to governmental agency records embodied in the FOIL legislation
 
 (see, Matter of Capital Newspapers v Burns, supra,
 
 67 NY2d, at 569).
 

 Hence, when access to an officer’s personnel records relevant to promotion or continued employment is sought under FOIL, nondisclosure will be limited to the extent reasonably necessary to effectuate the purposes of Civil Rights Law § 50-a — to
 
 *158
 
 prevent the potential use of information in the records in litigation to degrade, embarrass, harass or impeach the integrity of the officer. We said as much in
 
 Matter of Prisoners’ Legal Servs. (supra),
 
 when after describing the legislative purpose of section 50-a, we expressly stipulated that “records having
 
 remote or no such potential use,
 
 like those sought in
 
 Capital Newspapers,
 
 fall outside the scope of the statute” (73 NY2d, at 33 [emphasis supplied]). Thus, in
 
 Capital Newspapers v Burns (supra),
 
 we upheld FOIL disclosure of a single police officer’s record of absences from duty for a specific month. By itself, the information was neutral and did not contain any invidious implications capable facially of harassment or degradation of the officer in a courtroom. The remoteness of any potential use of that officer’s attendance record for abusive exploitation freed the courts from the policy constraints of Civil Rights Law § 50-a, enabling judicial enforcement of the FOIL legislative objectives in that case.
 

 On the other hand, under
 
 Matter of Prisoners’ Legal Servs. (supra),
 
 if the potential for the previously described abusive exploitation of the personnel data exists, confidentiality under Civil Rights Law § 50-a will not automatically be defeated solely because the person seeking access is a representative of a news-gathering organization, not contemplating litigation, and imbued with the purpose of disseminating information to the general public on a matter of legitimate societal concern. The Legislature has made the policy choice to shield law enforcement officers from personnel disclosures that “could be used in litigation for the purpose of harassing or embarrassing [them]”
 
 (Matter of Prisoners’ Legal Servs. v New York State Dept. of Correctional Servs., supra,
 
 73 NY2d, at 33). Potential abusive exploitation of the damaging information in personnel records exists irrespective of how, at whose behest or for what purpose the information is released into the public domain. Thus, in this case, once petitioners are able to obtain and publish the respective identities, misconduct and disciplinary sanctions of the 18 Schenectady police officers here, the information will be fully available for all of the forms and practices of abusive exploitation that Civil Rights Law § 50-a was designed to suppress. Such a facile means of totally undermining the statutory protection of section 50-a could not have been intended by the Legislature.
 

 As with all statutory exceptions to FOIL disclosure of governmental agency records, the agency or other party opposing disclosure of officers’ personnel records carries the burden
 
 *159
 
 of demonstrating that the requested information falls squarely within the exemption
 
 (see, Matter of Capital Newspapers v Burns, supra,
 
 67 NY2d, at 566;
 
 Matter of Fink v Lefkowitz,
 
 47 NY2d 567, 571). In the case of a claim that disclosure is “specifically exempted from disclosure by state * * * statute” (Public Officers Law § 87 [2] [a]), by reason of Civil Rights Law § 50-a, this means that the agency must demonstrate a substantial and realistic potential of the requested material for the abusive use against the officer or firefighter.
 

 It is possible that, in a close case, the status and purpose of the applicant may have some relevancy in determining the risk of oppressive utilization of the materials sought. Moreover, disclosure for uses that would not undermine the protective legislative objectives could be attained either by a restrictive formulation of the FOIL request itself, or through redaction by the agency having custody of the records, tailored in either case so as to preclude use in personal attacks against an officer which Civil Rights Law § 50-a was enacted to preclude.
 
 (See, Matter of Scott, Sardano & Pomeranz v Records Access Officer of City of Syracuse, supra,
 
 65 NY2d, at 298-299;
 
 see also, Matter of Capital Newspapers v Burns, supra,
 
 67 NY2d, at 565,
 
 affg
 
 109 AD2d 92, 93-94.) Thus, it may well be possible for petitioners largely to fulfill their important function of dissemination of matters of legitimate public interest, i.e., concerning the appropriateness of the City’s response to off-duty misconduct by members of its police force, without sacrificing the values the Legislature embraced in enacting Civil Rights Law § 50-a.
 

 In the case at bar, the subject of petitioners’ request itself demonstrates the risk of its use to embarrass or humiliate the officers involved. Petitioners seek comprehensive access to all records of the disciplinary action taken against the 18 police officers, including their identities and individual punishments, for possibly very serious misconduct. In
 
 Matter of Prisoners’ Legal Servs. (supra),
 
 we held that “[documents pertaining to
 
 misconduct
 
 or
 
 rules violations
 
 by correction officers * * * are the very sort of record which, the legislative history reveals, was intended to be kept confidential” (73 NY2d, at 31 [emphasis supplied]). This holding in
 
 Prisoners’ Legal Servs.
 
 is thus controlling here in favor of confidentiality under Civil Rights Law § 50-a.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the petitions dismissed.
 

 
 *160
 
 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur.
 

 Order reversed, etc.