Matter of The Herald Co. v Feurstein (2004 NY Slip Op 24073)

Matter of The Herald Co. v Feurstein

2004 NY Slip Op 24073 [3 Misc 3d 885]

February 23, 2004

Supreme Court, New York County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, July 14, 2004

[*1]
In the Matter of The Herald Company, Inc., Petitioner,
v
Robert Feurstein, as Records Access Appeals Officer of the New York State Racing and Wagering Board, et al., Respondents.
Supreme Court, New York County, February 23, 2004

APPEARANCES OF COUNSEL

Patricia A. Clark and Neil M. Rosenhouse for petitioner. Eliot Spitzer, Attorney General (Constantine A. Speres of counsel), for respondents.

{**3 Misc 3d at 886} OPINION OF THE COURT

Ronald A. Zweibel, J.
Petitioner The Herald Company, Inc., publisher of The Post-Standard newspaper, seeks review of respondents' final determination denying the newspaper's Freedom of Information Law (FOIL) request and moves this court for an order pursuant to article 78 of the CPLR and FOIL (Public Officers Law §§ 84-90), requiring respondents Robert Feurstein, in his official capacity as Records Access Appeals Officer of the New York State Racing and {**3 Misc 3d at 887}Wagering Board, and Sheila H. Osterhout, in her official capacity as Records Access Officer of the New York State Racing and Wagering Board, and New York State Racing and Wagering Board, to produce the daily inspection reports and patron complaints for the calendar year 2002 collected by the New York State Racing and Wagering Board from the Oneida Indian Nation Gaming Commission with regard to the Turning Stone Casino pursuant to section 4 (b) of the 1993 Compact entered into between the State of New York and the Oneida Indian Nation of New York (tribe). Respondents oppose the petition and cross-move to dismiss the petition pursuant to CPLR 7804 (f) and 3211 (a) (7) and (10). Petitioner opposes the cross motion to dismiss.

Background

The State of New York and the Oneidas entered into the Compact pursuant to the federal Indian Gaming Regulatory Act (25 USC § 2701 et seq. [IGRA]).[FN1]

IGRA requires that an Indian tribe wanting to open a casino enter into such a compact with the state government in order to regulate the activities of the casino and ensure that funds are used appropriately. [*2]IGRA is supposed to shield gaming from organized crime and corruption as well as assure that gaming is conducted fairly and honestly by both the operator and players (IGRA, 25 USC § 2702 [2]).
The New York State Racing and Wagering Board is a New York State agency created in 1973. The Board has authority to regulate class III Indian gambling in the state pursuant to the 1993 Compact entered into between the State and the Oneidas[FN2]

under the auspices of IGRA. The Board oversees, investigates and enforces the standards by which the State regulates the casino. The Oneidas reimburse the State for the costs of Board oversight of Nation gaming pursuant to the Compact (see Compact § 10 [b]).
According to petitioner, the existence of casino gambling in upstate New York raises a number of very serious and hotly debated {**3 Misc 3d at 888}issues and concerns basic to the public's well-being, including its impact on the local economy, the possibility of organized crime and corruption, and the moral ramifications of these activities. Petitioner argues that the public is entitled to know the extent of the Board's oversight of the casino (see petitioner's mem of law at 3).
Petitioner also claims that the public is entitled to know whether there are concerns involving the safety of the casinos, hotel and restaurant facilities and whether the casino in fact delivers the services it promises to its customers. Petitioner points to a February 26, 1999 and a February 12, 2003 article its newspaper ran involving complaints about the casino's facilities in support of its contentions (see petitioner's mem of law at 3).
As part of its extensive oversight of the casino, the Board collects copies of the daily inspection reports made by Oneida gaming officials, as well as copies of all patron complaints, pursuant to section 4 (b) of the Compact. Section 4 (b) of the Compact states in pertinent part:
"Access to Records. Copies of daily inspection reports made by the [Oneida Gaming] Commission employees and copies of any patron complaints respecting the gaming operations shall be submitted to the Board on a daily basis. In the course of any investigation by the Board of matters within its jurisdiction, the Board may request, and the Nation or its operator shall provide to the Board, business and accounting records of its gaming operations necessary to the conduct of that investigation. Records provided to the State by the Nation or its operator pursuant to this obligation shall be deemed confidential and proprietary financial information belonging to the Nation and shall not be subject to public disclosure by the State without the express written consent of the Nation. Such records shall be returned to the Nation at the conclusion of the investigation, unless the records constitute evidence in a criminal proceeding."
On July 26, 2002, Glenn Coin, a reporter for the Post-Standard newspaper, sent a FOIL request to respondent Sheila Osterhout, asking to view:
"All daily reports made by the Commission employees regarding the operation of the Turning Stone Casino, as required under Section 4 (b) of the Nation-{**3 Misc 3d at 889}State Compact between the Oneida Indian Nation of New York and the State of New York, for the calendar year 2002.
"All patron complaints respecting the gaming operations of Turning Stone Casino submitted to the Board as required under Section 4 (b) of the Nation-State Compact between the Oneida Indian Nation of New York and the State of New York, for the calendar year 2002."
Osterhout sent two separate two-page letters in response, each dated October 3, 2002. The letters contain the same first page but almost entirely different second pages. Both letters assert on the first page that the newspaper's request is denied because, in the Board's view, these records should be deemed confidential and proprietary under the Compact. On its second page, one of the letters made the additional argument that FOIL was inapplicable because the records are governed by federal law, not state law. No reference to the exemptions listed in Public Officers Law § 87 (2) was made.
Coin appealed to Robert Feurstein, the Board's Records Access Appeals Officer, in a letter dated October 9, 2002.
By letter dated October 25, 2002, Feurstein denied this appeal, asserting that the promise of confidentiality expressed in section 4 (b) of the Compact constituted a statutory exemption to disclosure under Public Officers Law § 87 (2) (a). Feurstein did not argue, as Osterhout had argued in one of the two letters, that state law was inapplicable or that the records are governed exclusively by federal law.
Feurstein sent a copy of his letter denying the newspaper's appeal to Robert Freeman, Executive Director of the New York State Committee on Open Government, seeking an advisory opinion. In his December 3, 2002 opinion, Freeman expressly disagreed with Feurstein's rationale for denying access to the requested records. Specifically, Freeman stated that the FOIL exemption claimed by the Board, applicable where records are exempted from disclosure by another state or federal statute, cannot be read to apply where the records allegedly are exempted by a compact entered into by a state agency, because a compact is not a statute (see Freeman op annexed to Bunn affidavit, exhibit F).
Timothy D. Bunn, Deputy Executive Editor of The Post-Standard, wrote to Feurstein asking that he reconsider his position in light of Freeman's analysis. Feurstein [*3]replied on January{**3 Misc 3d at 890} 13, 2003 that, notwithstanding Freeman's opinion, he would not release the requested documents.
The Herald Company filed the instant petition on February 24, 2003. On May 15, 2003, respondents filed and served their cross motion to dismiss on petitioner. On June 23, 2003, petitioner responded to the cross motion to dismiss.

Discussion

It is well-settled law that FOIL is based on the overriding policy consideration that "the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government" (Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]). The Court of Appeals has repeatedly held that FOIL is to be liberally construed and its exemptions narrowly interpreted so that the public is granted maximum access to the records of government (see Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen, 69 NY2d 246, 252 [1987]; Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 564 [1984]; Matter of Fink v Lefkowitz, 47 NY2d at 571; Matter of Citizens for Alternatives to Animal Labs v Board of Trustees of State Univ. of N.Y., 92 NY2d 357, 360-361 [1998]).
FOIL defines "record" as "any information kept, held, filed, produced or reproduced by, with or for an agency . . . in any physical form whatsoever" (Public Officers Law § 86 [4]). FOIL defines "agency" as "any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function for the state . . . except the judiciary or the state legislature" (Public Officers Law § 86 [3]). The court agrees with petitioner that the Board is plainly an "agency" under FOIL and, as information filed with an agency, the inspection reports and patron complaints are clearly "records" under FOIL. As petitioner points out, "the very broad definition" of "record" signals the Legislature's intent "to make the vast majority of documents presumptively discoverable as 'records' " subject to FOIL (Washington Post Co. v New York State Ins. Dept., 61 NY2d at 564; see petitioner's mem of law at 7).
Indeed, all agency records are presumptively available for public inspection and copying, unless the documents in question fall within one of the enumerated exemptions set forth in Public Officers Law § 87 (2) (see Matter of Encore Coll. v Auxiliary Serv., 87 NY2d 410, 417 [1995]; Matter of Hanig v State of New York {**3 Misc 3d at 891}Dept. of Motor Vehs., 79 NY2d 106, 109 [1992]; Matter of Legal Aid Socy. of Northeastern N.Y. v New York State Dept. of Social Servs., 195 AD2d 150, 152 [3d Dept 1993]). Blanket exemptions for particular types of documents are inimical to FOIL's open government policy (see Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 569 [1986]; Matter of Gould v New York City Police Dept., 89 NY2d 267 [1996]). Because the exemptions are narrowly construed, "the agency seeking to prevent disclosure bears the burden of demonstrating the applicability of the particular exemption claimed" (Matter of Legal Aid Socy. of Northeastern N.Y. v New York State Dept. of Social Servs., 195 AD2d at 153; Public Officers Law § 89 [4] [b]; see Hanig v State of New York Dept. of Motor Vehs., 79 NY2d at 109; Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d 145, 158-159 [1999]). The agency at issue must "articulat[e] a particularized and specific justification for denying access" to the requested documents (see Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d at 566; Matter of Fink v Lefkowitz, 47 NY2d at 571; [*4]Gould v New York City Police Dept., 89 NY2d at 275).
In its three denial letters, the Board asserts only one exemption available under FOILthe exemption for records that "are specifically exempted from disclosure by state or federal statute" (Public Officers Law § 87 [2] [a]). The Board claimed that the Compact was the equivalent of a statute under this exemption (see Feurstein letter annexed to Bunn affidavit, exhibit E).
However, the Board's argument is faulty. Tribal-state gaming compacts are agreements, not legislation, and are interpreted as contracts (see Texas v New Mexico, 482 US 124, 128 [1987]; Shakopee Mdewakanton Sioux [Dakota] Community v Hatch, 2002 WL 1364113, 2002 US Dist LEXIS 11305 [D Minn, June 20, 2002]; Confederated Tribes of Siletz Indians of Or. v State of Or., 143 F3d 481, 485-486 [9th Cir 1998]; Confederated Tribes of Chehalis Reservation v Johnson, 135 Wash 2d 734, 958 P2d 260, 267 [1998]). Accordingly, since the exemptions to FOIL are to be construed narrowly (see Gould v New York City Police Dept., 89 NY2d at 275), section 87 (2) (a) of the Public Officers Law does not seem to be applicable as the Compact is neither a state, nor federal, statute.
Thus, applying basic contract law to the Compact, to the extent the Compact specifically permits or prohibits the release of the daily inspection reports and patron complaints by the Board from the Commission with regard to the Turning Stone Casino {**3 Misc 3d at 892}pursuant to section 4 (b) of the Compact entered into between the State of New York and the Oneidas, the parties are bound by it. Where the Compact is silent, however, neither IGRA, the Indian Commerce Clause, nor any federal law prevents respondents from releasing the requested records (see Confederated Tribes of Siletz Indians of Or. v State of Or., 143 F3d 481, 487 [9th Cir 1998]).
Section 4 (b) of the Compact expressly deals with what documents the Oneidas must make available to the State and which of the records are confidential pursuant to the Compact and must be returned to the Oneidas. If FOIL did not apply then there would be no need to distinguish between confidential and nonconfidential material. Indeed, that the Compact contains this language seems to indicate that the parties presumed some documents/records would be available to the public. Given the Compact's silence with respect to the public release of the requested records or the applicability of FOIL to any of the records, the court does not see how supplying a copy of the records to petitioner, either pursuant to or independent of FOIL, violates the Compact (see Shakopee Mdewakanton Sioux [Dakota] Community v Hatch, 2002 WL 1364113, 2002 US Dist LEXIS 11305 [D Minn, June 20, 2002]; Confederated Tribes of Siletz Indians of Or. v State of Or., 143 F3d at 485; Confederated Tribes of Chehalis Reservation v Johnson, 958 P2d at 267-269).
Moreover, looking at the plain language of the Compact, while the Oneidas' interest in keeping some tribal gaming information confidential is clear, the scope of that interest is not. This court reads section 4 (b) of the Compact to say that the only records which are confidential are those relating to the course of any investigation by the Board of matters within its jurisdiction, in which the Board may request, and the Nation or its operator shall provide to the Board, business and accounting records of its gaming operations necessary to the conduct of that investigation. However, the Compact does not appear to exempt the daily inspection reports or patron complaints as they are provided to the Board, regardless of whether an investigation is pending.
Therefore, the daily inspection reports and patron complaints for the calendar year 2002 [*5]collected by the New York State Racing and Wagering Board from the Oneida Indian Nation Gaming Commission with regard to the Turning Stone Casino pursuant to section 4 (b) of the Compact entered into between the State of New York and the Oneida Indian Nation of New York are {**3 Misc 3d at 893}not exempt from disclosure under the terms of IGRA, the Compact or FOIL.

A. Preemption

Respondents argue that since the federal government has exclusive authority over Indian affairs, no state law can apply to Indian activities on Indian lands unless Congress has expressly made that law applicable. The doctrine of preemption is based on the Supremacy Clause of article VI of the United States Constitution (US Const, art VI [2]). The Supremacy Clause invalidates state laws that interfere with or are contrary to federal law (see Wisconsin Pub. Intervenor v Mortier, 501 US 597, 604 [1991]; Hillsborough County, Fla. v Automated Med. Labs, Inc., 471 US 707, 712 [1985]; Shakopee Mdewakanton Sioux [Dakota] Community v Hatch, 2002 WL 1364113, 2002 US Dist LEXIS 11305 [2002]). According to respondents' argument, IGRA provides for the application of state laws and regulations directly related to class III gaming, but not for application of state laws unrelated to gaming, such as the Public Officers Law. Respondents claim that because the Oneidas did not agree to the release of the daily inspection reports and patron complaints for the calendar year 2002 collected by the Board from the Commission with regard to the Turning Stone Casino in the Compact entered into between the State and the Oneidas, petitioner's proposed application of FOIL to the requested records is preempted by federal law.
The "doctrine" of federal preemption of Indian affairs prevents states from applying state law to tribal Indians on Indian reservations, without an express grant of authority from Congress (see California v Cabazon Band of Mission Indians, 480 US 202, 207 [1987]). The United States Supreme Court explained that "[s]tate jurisdiction is pre-empted . . . if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority." (New Mexico v Mescalero Apache Tribe, 462 US 324, 334 [1983].) The inquiry is to proceed in light of traditional notions of Indian sovereignty and the congressional goal of Indian self-government including its "overriding goal" of encouraging tribal self-sufficiency and economic development (see Mescalero, 462 US at 334-335). In Cabazon, the Court initially noted that no federal statute governed state involvement in Indian tribal gambling activities at that time. It then balanced the interests of the tribe, the federal government and the State of California before determining {**3 Misc 3d at 894}that the state's interest in preventing anticipated crime did not justify state regulation of tribal bingo enterprises in light of the compelling federal and tribal interests supporting them.
Cabazon led Congress to pass the IGRA. Where Congress passes a law governing tribal affairs in a certain area, the inquiry is designed to determine whether, in the specific context, the exercise of state authority would violate federal law (see, e.g., White Mtn. Apache Tribe v Bracker, 448 US 136, 145 [1980]). In enacting the IGRA, legislative history shows Congress recognized that both state and tribal government had significant interests in the operation of class III gaming activities (S Rep No. 100-446, 100th Cong, 2d Sess, reprinted in 1988 US Code Cong & Admin News, at 3071, 3083). However, neither the federal government nor the tribal government had systems in place for regulating class III gaming. "Thus a logical choice is to make use of existing State regulatory systems . . ." already in place. (1988 US Code Cong & Admin News, at 3083.) As stated above, the IGRA provides that the compacts may include provisions addressing:
[*6]
"(i) the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of such activity;
"(ii) the allocation of criminal and civil jurisdiction between the State and the Indian tribe necessary for the enforcement of such laws and regulations;
"(iii) the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity; . . .
"(vii) any other subjects that are directly related to the operation of gaming activities" (25 USC § 2710 [d] [3] [C]).
"State regulatory systems can be accomplished through negotiated compacts." (1988 US Code Cong & Admin News, at 3083-3084.) The question in the present case then is whether the application of the State's FOIL is incompatible with tribal and federal interests, as set forth in the IGRA. If it is, then application of FOIL would violate federal law.
The IGRA was enacted to enable Indian tribes to engage in gaming activities as a means of generating tribal governmental revenue (see 25 USC § 2701 [1]). "[A] principal goal of Federal Indian policy is to promote tribal economic development, tribal self-sufficiency, and strong tribal government" (25 USC § 2701{**3 Misc 3d at 895} [4]). Accordingly, in "determining whether federal law preempts a state's authority to regulate activities on tribal lands, courts must apply standards different from those applied in other areas of federal preemption" (Cabazon Band of Mission Indians v Wilson, 37 F3d 430, 433 [9th Cir 1994]). "State jurisdiction is pre-empted by the operation of federal law if it interferes or is incompatible with federal law and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify assertion of state authority" (New Mexico v Mescalero Apache Tribe, 462 US 324, 334 [1983]; Monfort v Larson, 257 AD2d 261, 263 [3d Dept 1999], lv dismissed 94 NY2d 875 [2000]; Drattel v Toyota Motor Corp., 92 NY2d 35, 42 [1998]). Thus, "in the Indian law context, state law is preempted not only by an explicit congressional statementthe traditional preemption standardbut also if the balance of federal, state and tribal interests tips in favor of preemption" (Gila Riv. Indian Community v Waddell, 91 F3d 1232, 1236 [9th Cir 1996]). Because the State's interest must be given weight, Indian tribes do not have an automatic exemption from state law (see White Mtn. Apache Tribe v Bracker, 448 US at 145).
Applying these rules here, the court notes that nowhere does IGRA state that records collected from an Indian Nation are not subject to state laws such as FOIL. The main thrust of IGRA is that states do have a role to play in overseeing casino gambling on Indian lands, and the statute does not address the applicability of other state laws. Second, petitioner does not seek records in the possession of an Indian Nation. Petitioner seeks records from the Board, a state regulatory agency, which keeps these records as part of its official business.
The requested documents cover a gaming enterprise which is used by a large number of nontribal members and in the case of the complaint reports, they are not necessarily filed by tribal members. Moreover, because this case concerns the application of a neutral state statute unrelated to Indian gaming, this court questions whether preemption applies at all. Indeed, the request for records in this case was directed to the Board, not the Oneidas. The requested records [*7]directly reflect on the Board's ability to enforce the tribal-state compact.
Preemption generally applies to Indian law where the application of state law "interferes or is incompatible with federal and tribal interests reflected in federal law" (Cabazon, 37 F3d at 433; Confederated Tribes of Siletz Indians of Or. v State of Or., 143 F3d 481, 487 [9th Cir 1998]). It is unclear how FOIL interferes {**3 Misc 3d at 896}with or is incompatible with IGRA or indeed the Compact. FOIL does not seek to usurp tribal control over gaming nor does it threaten to undercut federal authority over Indian gaming (see Confederated Tribes of Siletz Indians of Or. v State of Or., 143 F3d at 487). To be sure, FOIL could have a detrimental effect on the Oneida Nation if the requested reports contained damaging information on the operation of their casino and the release of the reports caused a decline in business. However, as the Ninth Circuit Court of Appeals in Confederated Tribes of Siletz Indians of Or. v State of Or. noted, "That possibility . . . is fully consistent with IGRA's goal of fair and honest gaming. See 25 U.S.C. § 2702(2)." (See 143 F3d at 487.) Indeed, according to the Ninth Circuit, preemption does not apply to a request made under the State's Public Officers Law (see Confederated Tribes of Siletz Indians of Or. v State of Or., 143 F3d at 487).
Thus, preemption does not apply as the production of the requested records under an IGRA-sponsored compact does not necessarily make control of those documents a matter of federal law, but is rather, a matter to be determined under the compact itself. Therefore, the State's argument that the application of FOIL to the Oneidas' gaming operations violates the IGRA fails.
Additionally, the Board has presented no real evidence of adverse impact as a result of the disclosure to the Oneidas. This court holds that the application of FOIL is not contrary to the goals of tribal self-government or tribal self-sufficiency (see Confederated Tribes of Siletz Indians, 143 F3d 481 [1998]).
The IGRA was not intended to diminish the right of state citizens to monitor, through requests for information, the performance of public servants in state agencies. IGRA does not preempt application of FOIL with respect to records held by the Board with respect to daily inspection reports and patron complaints under tribal-state compacts.

B. Oneidas as an Indispensable Party

Respondents also argue that the petition must be dismissed because the Oneidas are a necessary party who cannot be forced to appear in this matter as they are not subject to judicial process. Clearly, the Oneidas are not a party to this action. Although their interests are certainly affected by this litigation, the Oneidas have chosen not to participate. Unless Congress provides otherwise, Indian tribes, including the Oneidas, possess sovereign immunity against the judicial processes of states (see Saratoga County Chamber of Commerce v {**3 Misc 3d at 897}Pataki, 100 NY2d 801, 818 [2003], cert denied  US , 124 S Ct 570 [2003]; see also Santa Clara Pueblo v Martinez, 436 US 49, 58 [1978]; United States v United States Fid. & Guar. Co., 309 US 506, 512 [1940]). As a result, New York courts cannot force the Oneidas to participate in this matter. However, contrary to respondents' claim, the Oneidas' absence does not require this court to dismiss this action.
CPLR 1001 sets forth the rules governing when joinder of parties is necessary to continue an action affecting the rights of those parties. The statute defines necessary parties as "persons who ought to be parties if complete relief is to be accorded between the persons who are parties [*8]to the action" or persons who "might be inequitably affected by a judgment in the action." (CPLR 1001 [a].) A CPLR article 78 proceeding is subject to dismissal without prejudice if there has been a failure to join a necessary party (CPLR 1003; Save Our-Open Space v Planning Bd. of Vil. of S. Nyack, 256 AD2d 581, 582 [2d Dept 1998], lv denied 93 NY2d 808 [1999]). The rule requiring joinder of necessary parties "serves judicial economy by preventing a multiplicity of suits" and "insures fairness to third parties who ought not to be prejudiced or 'embarrassed by judgments purporting to bind their rights or interest where they have had no opportunity to be heard' " (City of New York v Long Is. Airports Limousine Serv. Corp., 48 NY2d 469, 475 [1979]).
To determine whether a nonparty is a necessary party, courts look to whether the interests of the nonparty could be adversely affected by a judgment in the plaintiff's favor. As the Court of Appeals noted in Saratoga County Chamber of Commerce v Pataki (100 NY2d at 818-819), there can be no remedy for the alleged violation of the Public Officers Law if the Oneidas' absence requires dismissal. In effect, the Board could insulate itself from review of its actions with respect to tribal gambling, a prospect antithetical to our system of checks and balances.
Moreover, the Oneidas have chosen to be absent. Nobody has denied it the "opportunity to be heard." While sovereign immunity prevents the Oneidas from being compelled to participate in New York court proceedings, it does not prevent others from foregoing the resolution of disputes that could affect the Oneidas (Saratoga County Chamber of Commerce v Pataki, 100 NY2d at 819). As the Court of Appeals has stated, "While we fully respect the sovereign prerogatives of the Indian tribes, we will not permit the Tribe's voluntary absence to deprive these plaintiff's (and in turn any member of the public) of their day in {**3 Misc 3d at 898}court." (Saratoga County Chamber of Commerce v Pataki, 100 NY2d at 820-821.) To the extent that the Oneidas are prejudiced by this court's adjudication of issues that affect its rights under the Compact, the Oneidas could have mitigated that prejudice by participating in the suit.
The court notes that the requested records are the property of the Board and outside the jurisdiction of the Oneidas. While it is possible that release of the patron complaints and inspection reports has the potential to embarrass the Oneidas if they reveal inappropriate practices at the casino, that possibility is fully consistent with IGRA's goal of "assur[ing] that gaming is conducted fairly and honestly by both the operator and players" (IGRA [25 USC] § 2702 [2]; Confederated Tribes of Siletz Indians, 143 F3d at 487).
The CPLR 1001 factors are meant to be balanced as appropriate under each case's unique circumstances. Balancing those factors, this court concludes that the Oneidas' nonjoinder is excusable as the Oneidas could have intervened if they wish to have been heard and, in any event, an effective judgment may be rendered without the Oneidas' participation.

C. Attorney's Fees and Other Costs

The petitioner requests an award of counsel fees and other costs. FOIL authorizes a court to award reasonable attorney's fees and other litigation costs reasonably incurred in any case in [*9]which the requestor has substantially prevailed, provided that the court finds that (1) the record involved was, in fact, of clearly significant interest to the general public, and (2) the agency lacked a reasonable basis in law for withholding the record (see Public Officers Law § 89 [4] [c]). However, even if these elements are met, an award of counsel fees remains within the discretion of the court (see Matter of URAC Corp. v Public Serv. Commn. of State of N.Y., 223 AD2d 906, 908 [3d Dept 1996]).
It is evident from the foregoing that the petitioner has substantially prevailed in the proceeding and the records in question are of "clearly significant interest to the general public." Upon the instant record however, and, particularly in view of the interest which the respondents sought to protect, the court cannot find that the respondents did not have a reasonable basis to withhold the documents. Under the circumstances, the court finds that the application for attorney's fees and costs must be denied.
Ordered and adjudged that the relief requested in the petition is granted to the extent that that portion of respondents' determinations {**3 Misc 3d at 899}denying petitioner's Freedom of Information application are vacated and annulled; and it is further ordered and adjudged that, within 30 days, respondent make available to petitioner the items specified in petitioner's Freedom of Information application not previously furnished; and it is further ordered and adjudged that petitioner's application for costs and attorney's fees is denied; and it is further ordered and adjudged that the cross motion is denied.

Footnotes

Footnote 1: IGRA establishes a comprehensive federal statutory scheme for the regulation of tribal gaming activities (see 25 USC § 2701 [4]; § 2702 [1] [2]). The act divides Indian gaming into three categories: classes I, II and III. Class III gaming is subject to the terms and conditions of a federal compact entered into between the tribe and the State.

Footnote 2: The State of New York and the Oneidas entered into a compact on April 16, 1993. The Secretary of the United States, Department of the Interior, approved the Compact on June 4, 1993 and the approval was published in the Federal Register on June 15, 1993 (58 Fed Reg 33160 [1993]).