OPINION OF THE COURT
Hancock, Jr., J.
Do inmate grievances against State correction officers and the administrative decisions relating thereto constitute "personnel records, used to evaluate performance toward continued employment or promotion” (Civil Rights Law § 50-a [1]) which are exempt from disclosure under the Freedom of Information Law (FOIL) (see, Public Officers Law § 87 [2] [a])? This is the central question presented in the article 78 proceeding brought by petitioner, Prisoners’ Legal Services, for an order permitting it to inspect or copy the grievance records involving a correction officer at the Fishkill Correctional Facility. The courts below, distinguishing Matter of Capital Newspapers v Burns (67 NY2d 562), held that the records sought are exempt from disclosure under Civil Rights Law § 50-a and dismissed the proceeding. We granted leave to appeal and now affirm.[1]
In its petition, Prisoners’ Legal Services states that it made a request for access to inmates’ grievances and agency decisions pertaining to a particular correction officer at Fishkill after receiving numerous complaints from prisoners about her *30 conduct. When the acting superintendent of Fishkill denied the request, petitioner filed an administrative appeal to respondent Department of Correctional Services which upheld the denial. Respondent held that, because the grievance information and agency determinations "would be utilized in evaluating work performance of [the officer]”, they were exempt from disclosure under Civil Rights Law § 50-a. In affirming Supreme Court’s dismissal of the petition, the Appellate Division found that the records sought are "considered to be part of an employee’s personnel record and are clearly relied upon in evaluating the employee’s performance” (138 AD2d 712, 713-714). It rejected petitioner’s contention that, because no lawsuit had been commenced, the Civil Rights Law § 50-a exemption should not apply. The court reasoned that the legislative purpose of protecting police and correction officers from harassment and reprisals would be served by granting the statutory protection before as well as after commencement of an action (138 AD2d, at 714). We agree with these conclusions.
In addressing respondent’s contention that inmate grievance documents may be withheld as confidential personnel records, we are mindful that FOIL is to be liberally construed and its exemptions narrowly interpreted (see, Public Officers Law § 84; Matter of Capital Newspapers v Whalen, 69 NY2d 246, 252; Matter of Fink v Lefkowitz, 47 NY2d 567, 571). The exemption in question states that an agency may deny access to records which are "specifically exempted from disclosure” by a State statute (Public Officers Law §87 [2] [a]). Here, the applicable State statute provides that "personnel records, used to evaluate performance toward continued employment or promotion * * * shall be considered confidential and not subject to inspection or review [except on written consent or by court order]” (Civil Rights Law § 50-a [1]). The precise statutory question presented does not involve an interpretation of FOIL, but the meaning of "personal records” under Civil Rights Law § 50-a (l)[2] — i.e., whether they encompass the particular griev *31 anee records demanded here (see, Matter of Newsday, Inc. v Sise, 71 NY2d 146, 150-151). If so, those records are, by express terms of the statute, to be "considered confidential” and not subject to review and, thus, access may be properly withheld under Public Officers Law § 87 (2) (a) (see, Matter of Newsday, Inc. v Sise, supra).
Section 50-a provides no definition or other language explaining or qualifying what is covered by the term "personnel records” except that such records must be under the control of the particular agency or department and be used to evaluate performance toward continued employment or promotion. Under these limited criteria, however, records pertaining to inmate grievances would fall within the statute. They are documents containing personal, employment-related information about a public employee, namely, complaints made by inmates about the on-the-job conduct of certain correction officers; these documents are received, processed and maintained as part of a correctional facility’s operations (see, Correction Law § 139; Inmate Grievance Program 7 NYCRR part 701; DOCS Policy Directive No. 4040); and, as found by the Appellate Division, they "are clearly relied upon in evaluating the employee’s performance” (138 AD2d 712, 713, supra). (Accord, Matter of Gannett Co. v James, 86 AD2d 744, 745, lv denied 56 NY2d 502 [complaints against police officers held to be personnel records used to evaluate performance].)
Documents pertaining to misconduct or rules violations by correction officers — which could well be used in various ways against the officers — are the very sort of record which, the legislative history reveals, was intended to be kept confidential. The legislative purpose underlying section 50-a when originally enacted to apply to police officers (see, Carpenter v City of Plattsburgh, 105 AD2d 295, 298, affd for reasons stated below 66 NY2d 791) and later amended to cover correction officers (see, Matter of Capital Newspapers v Burns, 67 NY2d 562, 568, supra) was the same: to protect the officers from the use of records — including unsubstantiated and irrelevant complaints of misconduct — as a means for harassment and reprisals and for purposes of cross-examination by plaintiffs coun *32 sel during litigation (see, e.g., Mem of Senator Padavan and Assemblyman DeSalvio, and Mem of Division of Criminal Justice Services, Governor’s Bill Jacket, L 1976, ch 413; Mem of Senator Marino in support of L 1981, ch 778, 1981 NY Legis Ann, at 419; various memoranda in support of L 1981, ch 778 filed by Assemblyman Kremer, the State Commission of Correction, the American Federation of State, County, and Municipal Employees, and the State Division of Budget).
Petitioner argues, nonetheless, that the "personnel records” exemption should not apply because records of prisoners’ complaints of misconduct or rules violations against a correction officer — although held to be of significance to a superior in considering continued employment or promotion (138 AD2d, at 713) — are not actually maintained as part of officers’ employment records or in their personnel files; they are kept by the Inmate Grievance Resolution Committee (see, 7 NYCRR 701.14 [b]; DOCS Policy Directive No. 4040 [IV] [B] [3]). But whether a document qualifies as a personnel record under Civil Rights Law § 50-a (1) depends upon its nature and its use in evaluating an officer’s performance — not its physical location or its particular custodian. Indeed, it has been held that applicability of the statute "cannot be determined simply on the basis of where the information is stored” (Matter of Capital Newspapers v Burns, 109 AD2d 92, 95, affd 67 NY2d 562, supra; see also, Matter of Gannett Co. v James, supra). The construction petitioner urges seems inimical to the very statutory purpose of preventing the use of personnel records as a device for harassing or embarrassing police and correction officers. The records of prisoners’ complaints requested here, regardless of where they are kept, could certainly be employed for these purposes. Such an interpretation — which would frustrate the aim of the statute — should be rejected (see, Matter of Newsday, Inc. v Sise, supra, at 152).
Similarly, we reject the argument that, section 50-a was intended to afford protection only after a particular grievance has become the subject of litigation. Again, the argument finds no support in the statutory language and authority on the point is to the contrary (see, Matter of Thomas v New York City Tr. Police Dept., 91 AD2d 898, 899).
Contrary to the dissent, the conclusion that records may be protected from disclosure under section 50-a, even though not sought for actual litigation, is entirely consistent with the statutory scheme. The statute bars disclosure of personnel *33 records "considered confidential” under section 50-a (1), absent consent of the officer involved, except as mandated by a "lawful court order”; it further provides, under section 50-a (3), that such a court order may not be issued unless, after a hearing and in camera inspection, it appears to the reviewing Judge that "the records are relevant and material in the action before him”. There can be no question that the statute thus permits court-ordered disclosure of personnel records within its protection — i.e., those that have potential use in harassing and embarrassing officers in litigation — only in the context of an ongoing litigation. But this does not suggest, as the dissent argues, that personnel records must first be related to pending litigation before receiving the statute’s protection. If such a narrow view of section 50-a were adopted, the statute could be circumvented by the simple expedient of making FOIL requests for the records first and bringing the lawsuit later. The Legislature could not have intended to enact a statute that could so easily be rendered ineffectual (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 144, at 291).
Moreover, Matter of Capital Newspapers v Burns (supra)— permitting a newspaper reporter FOIL access to police records —does not support petitioner’s request in this case. Unlike the grievance records demanded here by Prisoners’ Legal Services, the police officers’ attendance and sick leave records at issue in Capital Newspapers were sought for a purpose and in a context that could have had no relation to potential litigation. In concluding that the materials requested in Capital Newspapers did not constitute the kind of personnel records protected under section 50-a, we by no means suggested that the application of that statute was limited to an ongoing litigation. Rather, we simply recognized that the legislative intent in enacting the 1981 amendment to section 50-a was to prevent release of sensitive personnel records that could be used in litigation for the purpose of harassing or embarrassing correction officers (see, 67 NY2d, at 568-569, supra); records having remote or no such potential use, like those sought in Capital Newspapers, fall outside the scope of the statute.
Finally, petitioner argues that the amendment of Civil Rights Law § 50-a (L 1981, ch 778) was intended to protect local but not State correction officers. We perceive no merit in this claim. The statute draws no such distinction and there is nothing in its underlying purpose or legislative intent which would support limiting its application to correction officers at local facilities. The need to protect correction officers from *34 unrestricted examination of their personnel records is equally compelling for State and local employees.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. Because we decide the appeal under Civil Rights Law § 50-a, we do not reach respondent’s contention that the records should also be exempt because disclosure would involve an unwarranted invasion of personal privacy (see, Public Officers Law § 87 [2] [b]; § 89 [2] [b] [iv]).

. Section 50-a (1) (personnel records of police officers, firefighters and correction officers) provides: "All personnel records, used to evaluate performance toward continued employment or promotion, under the control of any police agency or department of the state or any political subdivision thereof including authorities or agencies maintaining police forces of individuals defined as police officers in section 1.20 of the criminal procedure law and such personnel records under the control of a sheriffs department or a department of correction of individuals employed as correction officers *31 and such personnel records under the control of a paid fire department or force of individuals employed as firefighters or firefighter/paramedics shall be considered confidential and not subject to inspection or review without the express written consent of such police officer, firefighters, firefighter/ paramedic or correction officer except as may be mandated by lawful court order.”