[51 NYS3d 46]

In the Matter of Justine Luongo, Respondent, v Records Access Officer, Civilian Complaint Review Board, Appellant, and Daniel Pantaleo, Intervenor-Appellant.

First Department, March 30, 2017

14

**APPEARANCES OF COUNSEL**

*Zachary W. Carter, Corporation Counsel*, New York City
(*Aaron M. Bloom, Richard Dearing* and *Devin Slack* of counsel),

for Records Access Officer, Civilian Complaint Review Board, appellant.

*Worth, Longworth & London*, New York City (*Mitchell Garber* of counsel), for Officer Daniel Pantaleo, appellant.

*Seymour W. James, Jr., The Legal Aid Society*, New York City (*Cynthia Conti-Cook* of counsel), and *Kramer Levin Naftalis & Frankel LLP*, New York City (*Jeffrey L. Braun* and *Anna K. Ostrom* of counsel), for respondent.

*Rankin & Taylor, PLLC*, New York City (*Jane L. Moisan, David B. Rankin* and *Vanessa Selbst* of counsel), for Communities United for Police Reform and others, amici curiae.

*Cleary Gottlieb Steen & Hamilton LLP*, New York City (*Avram E. Luft, Nefertiti J. Alexander, Mark E. McDonald* and *Grace J. Kurland* of counsel), for Progresive Caucus of the New York City Council and others, amici curiae.

*Davis Wright Tremaine LLP*, Washington, DC (*Alison Schary* of counsel), for The Reporters Committee for Freedom of the Press and others, amici curiae.

## OPINION OF THE COURT

SWEENY, J.P.

The issues before us stem from the extensively publicized arrest and death of Eric Garner on July 17, 2014. Intervenor Police Officer Daniel Pantaleo was depicted in a bystander video applying a choke hold to Mr. Garner during the incident. An investigation followed, and on December 2, 2014, a grand jury declined to indict Officer Pantaleo in connection with Mr. Garner's death.

Petitioner submitted a Freedom of Information Law (FOIL) letter request to respondent Records Access Officer, Civilian Complaint Review Board (CCRB), dated December 18, 2014, seeking eight categories of records concerning Officer Pantaleo, dating from 2004 to the date of Mr. Garner's death. Petitioner sought: (1) the number of complaints filed against Officer Pantaleo; (2) the number of allegations contained within each complaint; (3) the outcome of CCRB's investigation of each allegation; (4) any prosecution by CCRB in response to such finding; (5) the outcome of any prosecution by CCRB; (6) any charges and specifications filed by the New York City Police Department's (NYPD) Department Advocate Office; (7) the outcome of any Department Advocate Office proceedings; and (8) any other agency actions in response to the above requests.

On December 24, 2014, CCRB denied the request, citing the statutory exemption from disclosure provided for police personnel records contained in Public Officers Law § 87 (2) (a) and Civil Rights Law § 50-a. In addition to the statutory exemptions, CCRB noted that the request for records relating to unsubstantiated matters would constitute "an unreasonable invasion of privacy." Finally, CCRB noted that it was not possible to redact any responsive records "in a way that will disassociate allegations against [Officer Pantaleo] given the nature of" petitioner's request. Petitioner appealed to the CCRB on December 29, 2014, but received no response.

This CPLR article 78 proceeding was commenced on February 17, 2015, and sought an order directing the CCRB to produce "a summary of the number of allegations, complaints and outcomes brought against" Officer Pantaleo. Much of petitioner's broader initial request was thus abandoned. During the proceedings, petitioner further narrowed its FOIL request, seeking only information as to "whether the CCRB substantiated complaints against Officer Pantaleo and, if so, whether there were any related administrative proceedings, and those outcomes, if any." Officer Pantaleo applied for and was granted intervenor status as a party respondent. His opposition papers alleged, among other things, that even the requested summary of the CCRB records was exempt from disclosure because it would endanger his life and the lives of his family members. In support, he referenced online, unsubstantiated reports of alleged misconduct on his part that resulted in the arrest of a Michigan man in February 2015 for posting Facebook death threats against him. Officer Pantaleo also stated that the NYPD's Threat Assessment Unit had assigned police officers to watch over him and his family 24 hours a day, 7 days a week, and implemented other security measures as well. He also agreed with the CCRB that the requested documents constituted "personnel records" within the meaning of Civil Rights Law § 50-a (1) and were therefore exempt from disclosure.

Supreme Court found, without conducting an in camera review of the requested information, that the summary sought by petitioners did not constitute a "personnel record" exempted from disclosure by Civil Rights Law § 50-a because the CCRB is "a city agency independent of the NYPD" (*Matter of Luongo v Records Access Officer, Civilian Complaint Review Bd.*, 49 Misc 3d 708, 716 [2015]). The court further found that even if the summary constituted a "personnel record," nondisclosure

would not be " 'reasonably necessary to effectuate the purposes of Civil Rights Law § 50-a—to prevent the potential use of information in the records in litigation to degrade, embarrass, harass or impeach the integrity of the officer' " (*id.* at 717, quoting *Matter of Daily Gazette Co. v City of Schenectady*, 93 NY2d 145, 157-158 [1999]). Finally, the court was "not convinced" that release of the records was likely to cause harm to Officer Pantaleo, finding that intervenor had not established a causal connection between the online, unsubstantiated reports and the Facebook death threats (*id.* at 719). The court opined that a backlash from the release of the summary, if any, would be directed at the NYPD and not Officer Pantaleo. The CCRB was directed to prepare the requested summary and release it to petitioner. We now reverse.

We begin our analysis by reviewing the regulatory and statutory framework applicable to this case.

The CCRB is the New York City agency that receives and investigates complaints made by a member of the public against an officer employed by the NYPD alleging misconduct of any of four specific categories: use of excessive force, abuse of authority, offensive language, or discourtesy (NY City Charter § 440 [c] [1]). After investigating the complaint, the CCRB determines whether the complaint is substantiated and, if so, it submits findings and disciplinary recommendations to NYPD's Commissioner (*id.*). These complaints, whether substantiated or not, and disciplinary recommendations, if any, "are recorded in [the] officers' personnel records and can affect assignments and promotions."[1]

The officer against whom the complaint is filed is entitled to a hearing before the NYPD's Deputy Commissioner of Trials or an Assistant Deputy Commissioner. This trial is open to the public (*see* 38 RCNY 15-03; 15-04 [g]; Administrative Code of City of NY § 14-115 [b]). Pursuant to a Memorandum of Understanding (MOU) dated April 2, 2012, between the CCRB and NYPD, in the event an officer requests a hearing, the CCRB is authorized to prosecute the complaint before the Deputy Commissioner of Trials or an Assistant Deputy Commissioner. Paragraph eight of the MOU provides that the Police Commissioner "shall retain in all respects the authority and discretion to make final disciplinary determinations."

---

1. *See* CCRB website at http://www1.nyc.gov/site/ccrb/prosecution/police-discipline.page.

Paragraph 25 of the MOU provides, in pertinent part: "Documents provided to CCRB by NYPD or created by CCRB pursuant to this MOU that are by law police personnel records are therefore confidential pursuant to NYS Civil Rights Law § 50-a. Such documents are also confidential information pursuant to NYC Charter § 2604 (b) (4)." Paragraph 26 further provides that any verbal information provided shall be treated as confidential and shall not be disclosed. While certainly not binding on this Court, the MOU, in substance, acknowledges the absence of a statutory definition of "personnel records" in Civil Rights Law § 50-a and attempts to fill that gap.

At the conclusion of the hearing, the Deputy Commissioner or Assistant Deputy Commissioner prepares a report and recommendation containing findings of fact and conclusions of law. If the NYPD Commissioner approves it, the report and recommendation is so marked and a separate document is prepared, containing the final disposition and penalty to be imposed (*see* 38 RCNY 15-08 [a]). These documents are thereafter placed in the officer's personnel file.

FOIL (Public Officers Law §§ 84-90) presumes that all agency records are available for public inspection and copying, unless an exemption expressly provides otherwise (*see* Public Officers Law §§ 84, 87 [2]; *Matter of Data Tree, LLC v Romaine*, 9 NY3d 454, 462 [2007]). An agency may withhold public documents requested pursuant to FOIL only if it "articulate[s] particularized and specific justification for not disclosing requested documents" (*Matter of Gould v New York City Police Dept.*, 89 NY2d 267, 275 [1996] [internal quotation marks omitted]). The agency bears the burden of establishing that the requested material falls within one of the narrow exemptions to the general mandate of open access to government documents (*Matter of Town of Waterford v New York State Dept. of Envtl. Conservation*, 18 NY3d 652, 657 [2012]; *Data Tree*, 9 NY3d at 462).

FOIL further provides that agencies may deny access to records or portions thereof that are specifically exempted from disclosure by state or federal statute (Public Officers Law § 87 [2] [a]). Civil Rights Law § 50-a (1) contains one of those statutory exemptions. It provides, in pertinent part, that "[a]ll personnel records used to evaluate performance toward continued employment or promotion . . . shall be considered confidential and not subject to inspection or review without the express written consent of such police officer . . . except as may be mandated by lawful court order."

We are called upon to determine whether the documents sought herein are the type of documents that fall within the parameters of "personnel records" and are thus protected from disclosure. Civil Rights Law § 50-a does not define "personnel records," leaving it to the courts to determine the kinds of documents that qualify for this exemption.

Statutes should be interpreted in a manner designed to effectuate the legislature's intent, construing clear and unambiguous statutory language "so as to give effect to the plain meaning of the words used" (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205, 208 [1976]; *Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 106-107 [1997]). In that regard, the text of the statute remains the best evidence of the legislature's intent (*Matter of Polan v State of N.Y. Ins. Dept.*, 3 NY3d 54, 58 [2004]).

We are not without guidance with respect to the kinds of documents that constitute "personnel records." The Court of Appeals has spoken several times on this issue, and we now turn to an analysis of the relevant cases.

There is "no definition or other language explaining or qualifying what is covered by the term 'personnel records' except that such records must be under the control of the particular agency or department and be used to evaluate performance toward continued employment or promotion" (*Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Correctional Servs.*, 73 NY2d 26, 31 [1988]). Significantly, it is the document's "nature and its use in evaluating an officer's performance—not its physical location or its particular custodian" that determines whether a particular document constitutes a personnel record (*id.* at 32). The threshold criterion, therefore, is whether the document is "of significance to a superior in considering continued employment or promotion" (*id.* at 32). The analysis of Civil Rights Law § 50-a and its legislative history in *Matter of Daily Gazette Co. v City of Schenectady* (93 NY2d 145 [1999], *supra*) is highly instructive. The petitioners in *Gazette* were two newspapers that sought "records regarding disciplinary action against 18 officers" of the Schenectady Police Department arising out of allegations that they were involved in throwing eggs at a civilian vehicle while off-duty (*id.* at 152). The petition alleged that the officers had disciplinary sanctions confidentially imposed upon them as a result of that incident (*id.*).

The Court rejected the petitioners' argument that the statutory exemption should be narrowly construed to apply only to

parties likely to use the records in litigation, on the ground that this interpretation "conflicts with the plain wording of the statute, is contrary to its legislative history," and "would undermine the paramount objectives of the Legislature in enacting section 50-a" (*id.* at 153). The plain text of the statute "unambiguously defines the records that are immune from indiscriminate disclosure" and establishes "a legal process whereby the confidentiality of the records may be lifted by a court, but only after an in camera inspection," with notice to the parties and an opportunity to be heard (*id.* at 154). The Court observed that "[a]s a policy choice, undisputably within its constitutional prerogatives which we are constrained to respect, the Legislature elected to shield the personnel records of these officers from disclosure upon request with only a strictly limited status/purpose exception" (*id.*).

In its review of the statute's legislative history, the Court noted that section 50-a "was first enacted into law (L 1976, ch 413) some two years after passage of the original FOIL legislation (L 1974, ch 578)," by which time the legislature "was well aware of the use of FOIL to obtain such records," and that the "statute was designed to prevent abusive exploitation of personally damaging information contained in officers' personnel records" (*id.* at 154). While acknowledging that such abuse would most often occur in the context of a criminal defense attorney's FOIL request for an officer's records to use on cross-examination of the officer, the Court, citing memoranda from the legislative record, nevertheless refused to limit nondisclosure to litigation, noting that the legislation "was sponsored and passed as a safeguard against potential harassment of officers through unlimited access to information contained in personnel files" (*id.* at 155).

Since the statute's enactment, each Judicial Department has had the occasion to address the issue of whether civilian complaints constitute "personnel records" within the meaning of Civil Rights Law § 50-a (1), and each has held that information similar to that sought here falls squarely within the statutory exemption. For example, in *Matter of Gannett Co. v James* (86 AD2d 744, 745 [4th Dept 1982], *lv denied* 56 NY2d 502 [1982]), the Court determined that records of complaints filed with the Internal Affairs Divisions of several police departments and documents reflecting the final disposition of hearings held with respect thereto "[c]learly . . . fall within the statutory exemption." The Court also noted that "the confiden-

tiality afforded to those who wish it in reporting abuses is an important element in encouraging reports of possible misconduct which might not otherwise be made" (*id.*; *see also Matter of Hearst Corp. v New York State Police*, 132 AD3d 1128, 1129-1130 [3d Dept 2015] ["Proof that information was generated for the purpose of assessing an employee's alleged misconduct brings that information within the protection of Civil Rights Law § 50-a (1)" and need not actually be used in disciplinary proceedings to acquire protection from disclosure]; *Matter of Columbia-Greene Beauty Sch., Inc. v City of Albany*, 121 AD3d 1369, 1370 [3d Dept 2014] ["Personnel records include documents relating to misconduct or rule violations by police officers"]; *Matter of McGee v Johnson*, 86 AD3d 647 [2d Dept 2011], *lv denied* 19 NY3d 804 [2012] [affirming dismissal of petition to compel the disclosure of the Carmel Police Department's final determination of a "civilian complaint" made against police officers because the determination was a personnel record exempt under Public Officers Law § 87 (2) (a) and Civil Rights Law § 50-a]; *Espady v City of New York*, 40 AD3d 475, 476 [1st Dept 2007] [in an action to obtain misconduct complaints and records against police officers who executed a no-knock warrant, disclosure was denied since "any personnel or disciplinary records, reprimands, complaints and investigations of the police officers . . . involved in any manner with this matter are protected under Civil Rights Law § 50-a"]; *Matter of Argentieri v Goord*, 25 AD3d 830, 832 [3d Dept 2006] [a complaint against officers, whether substantiated or not, "subjects the officer to possible disciplinary sanctions and is thus an evaluative tool," bringing it within the ambit of Civil Rights Law § 50-a]; *Matter of Ruberti, Girvin & Ferlazzo v New York State Div. of State Police*, 218 AD2d 494, 497 [3d Dept 1996] ["(I)t cannot seriously be argued that . . . any personnel or discrimination complaints filed against respondent's members( ) fail to qualify as 'personnel records' within the meaning of Civil Rights Law § 50-a (1) . . . (T)he records at issue here, particularly those relating to complaints of misconduct, are the very types of documents that the statute was designed to protect in the first instance"]; *Matter of Lyon v Dunne*, 180 AD2d 922, 923 [3d Dept 1992], *lv denied* 79 NY2d 758 [1992] [dismissing article 78 petition on the ground that "complaints, reprimands and incidents of misconduct of three State Police officers . . . are used to evaluate performance toward continued employment of the three officers and are exempt pursuant to Public Officers Law § 87 (2) (a) and Civil Rights Law § 50-a"]).

*Matter of Capital Newspapers Div. of the Hearst Corp. v City of Albany* (15 NY3d 759 [2010]) does not require a different result. That case involved FOIL requests seeking documents from the 1990s pertaining to the alleged use of official Albany Police Department channels to arrange for the purchase of assault-type rifles for personal, nonofficial use by several individual police officers. The documents in question in that case were 42 "gun tags," although the record, as the Appellate Division noted, "does not make clear exactly what these documents actually are" (63 AD3d 1336, 1337 n 1 [3d Dept 2009]). The parties agreed that the documents were "tags put on the guns returned to the police department by individuals who had the guns in their personal possession" and contained "an individual's name, a serial number and some sort of identification number" (*id.*). The Appellate Division determined that any "gun tags" containing the names of current or former police department employees were "personnel records" as envisioned by Civil Rights Law § 50-a (*id.* at 1338-1339). The Court stated that redaction of the names of those current or former members of the department would adequately protect the officers and directed that the records, as so redacted, be released.

The Court of Appeals modified that decision (15 NY3d 759 [2010]). The Court held that the City of Albany had failed to meet its burden of demonstrating that the "gun tags" were personnel records as envisioned by Civil Rights Law § 50-a (1) in that there was no evidence that "the documents were 'used to evaluate performance toward continued employment or promotion,' as required by that statute" (*id.* at 761). The Court of Appeals held that "the unredacted gun tags do not fall squarely within a statutory exemption and are subject to disclosure" under FOIL (*id.*).

 Here, by contrast, there is no question that the summary sought involves one officer and are part and parcel of his personnel file. There is also no question that the records sought are "used to evaluate performance toward continued employment or promotion," as required by the statute. Unlike those at issue in *Capital Newspapers*, the requested documents here do "fall squarely within a statutory exemption" of Civil Rights Law § 50-a (1) and are thus not subject to disclosure, under applicable precedent.

CCRB findings and recommendations are clearly of significance to superiors in evaluating police officers' performance. As noted, all complaints filed with the CCRB, regardless of the

outcome, are filed with and remain in an officer's CCRB history, which is part of his or her personnel record maintained by the NYPD.[2] We therefore hold that the CCRB met its burden of demonstrating that those documents constitute "personnel records" for purposes of Civil Rights Law § 50-a, and that they fall squarely within a statutory exemption of the statute (*see Matter of Daily Gazette Co. v City of Schenectady*, 93 NY2d 145 [1999], *supra*; *Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Correctional Servs.*, 73 NY2d 26 [1988], *supra*).

It bears noting that Civil Rights Law § 50-a makes no distinction between a summary of the records sought and the records themselves. Releasing a summary of protected records would serve to defeat the legislative intent of the statute in exempting those records from disclosure. It is hard to imagine that in a situation like this, where the legislative intent is so clear, the simple expedient of releasing a summary of protected records concerning substantiated complaints against an identified police officer can be used to circumvent the statute's prohibitions on disclosure. "Such a facile means of totally undermining the statutory protection of section 50-a could not have been intended by the Legislature" (*Matter of Daily Gazette*, 93 NY2d at 158; *see Prisoners' Legal Servs.*, 73 NY2d at 31). The requested information here is far different from the "neutral" information which "did not contain any invidious implications capable facially of harassment or degradation of the officer" (*Matter of Daily Gazette*, 93 NY2d at 158) as the information released in *Matter of Capital Newspapers Div. of Hearst Corp. v Burns* (67 NY2d 562 [1986] [affirming the disclosure of a redacted police officer's attendance record of absences from duty for a specific month]).

Petitioners attempt to distinguish *Prisoners' Legal Servs.* on the basis that the records in that case were maintained in the correctional facility itself, as part of the facility's prisoner grievance program, and not by a separate agency such as the CCRB. This is a distinction without a difference. The Court of Appeals addressed this issue head on by holding that

> "whether a document qualifies as a personnel record under Civil Rights Law § 50-a (1) depends upon its nature and its use in evaluating an officer's performance—not its physical location or its particular

---

2. *See* CCRB website, n 1, *supra*.

custodian. Indeed, it has been held that applicability of the statute 'cannot be determined simply on the basis of where the information is stored' " (*Prisoners' Legal Servs.*, 73 NY2d at 32, quoting *Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 109 AD2d 92, 95 [3d Dept 1985], *affd* 67 NY2d 562 [1986]).

To hold otherwise would be to defeat the clear legislative purpose of the statute. In light of its not insignificant role in the police disciplinary process, the fact that CCRB is a separate agency from NYPD is of no moment, and its records are subject to the constraints of Civil Rights Law § 50-a (*see Prisoners' Legal Servs.*, 73 NY2d at 32; *Telesford v Patterson*, 27 AD3d 328 [1st Dept 2006]).

Respondents' prior disclosure of records concerning other officers cannot act as an estoppel against objections to releasing the records requested herein (*see Matter of New York Civ. Liberties Union v New York City Police Dept.*, 148 AD3d 642 [1st Dept 2017] [decided herewith], citing *Matter of City of New York v City Civ. Serv. Commn.*, 60 NY2d 436, 449 [1983]; *Matter of Mazzone v New York State Dept. of Transp.*, 95 AD3d 1423, 1424-1425 [3d Dept 2012]). Nor does the fact that the NYPD has released, in other matters on prior occasions, results of disciplinary actions act as a waiver. As stated in the context of other statutory exemptions: "Nothing in the Freedom of Information Law . . . restricts the right of the agency if it so chooses to grant access to records within any of the statutory exceptions, with or without deletion of identifying details" (*Matter of Short v Board of Mgrs. of Nassau County Med. Ctr.*, 57 NY2d 399, 404 [1982]; *see also Matter of New York Civ. Liberties Union v New York City Police Dept.*, 148 AD3d 642 [1st Dept 2017]).

Respondents contend that the production of the requested summary has a sufficient potential for abusive use against Officer Pantaleo, and that is an additional reason to support CCRB's decision to withhold disclosure.

Where a document qualifies as a "personnel record," "nondisclosure will be limited to the extent reasonably necessary to effectuate the purposes of Civil Rights Law § 50-a—to prevent the potential use of information in the records in litigation to degrade, embarrass, harass or impeach the integrity of the officer" (*Daily Gazette*, 93 NY2d at 157-158). Additionally, Civil Rights Law § 50-a also protects documents outside of litigation,

in order to prevent "harassment or reprisals against an officer or his/her family" (*id.* at 155 [citation and internal quotation marks omitted]). The Court of Appeals has emphasized that "[d]ocuments pertaining to misconduct or rules violations . . .—which could well be used in various ways against the officers—are the very sort of record which, the legislative history reveals, was intended to be kept confidential" (*Prisoners' Legal Servs.*, 73 NY2d at 31).

Thus, an "agency or other party opposing disclosure of officers' personnel records carries the burden of demonstrating that the requested information falls squarely within the exemption" by demonstrating "a substantial and realistic potential of the requested material for the abusive use against the officer" (*Daily Gazette*, 93 NY2d at 158-159).

Petitioner argues that there can be no potential for abusive use of these documents, since there has been no showing of any causal connection between leaks of CCRB documents that have already occurred and the death threat against Officer Pantaleo. This argument misses the mark.

While there may be no intent to embarrass or humiliate the officer in question by any of the parties or amici herein, there can be no question that once this information is released, it "will be fully available for all of the forms and practices of abusive exploitation that Civil Rights Law § 50-a was designed to suppress" (*Matter of Daily Gazette*, 93 NY2d at 158; *see Prisoners' Legal Servs.*, 73 NY2d at 31).

Where "a substantial and realistic potential" of endangerment or harassment to either public servants or potential witnesses resulting from disclosure has been shown, the appellate courts of this state have consistently denied disclosure under both Civil Rights Law § 50-a and Public Officers Law § 87 (2) (a).

"Public Officers Law § 87 (2) (f) permits an agency to deny access to records, that, if disclosed, would endanger the life or safety of any person. The agency in question need only demonstrate 'a possibility of endanger[ment]' in order to invoke this exemption" (*Matter of Bellamy v New York City Police Dept.*, 87 AD3d 874, 875 [1st Dept 2011], quoting *Matter of Connolly v New York Guard*, 175 AD2d 372, 373 [3d Dept 1991], *affd* 20 NY3d 1028 [2013]; *see Matter of Ruberti, Girvin & Ferlazzo v New York State Div. of State Police*, 218 AD2d 494, 499 [3d Dept 1996], *supra*). The respondent need not demonstrate the existence of a specific threat or intimidation, but rather a show-

ing must be made of a "possibility of endanger[ment]" to invoke this exemption (*Matter of Exoneration Initiative v New York City Police Dept.*, 114 AD3d 436, 438 [1st Dept 2014] [internal quotation marks omitted]; *see Matter of Gould v New York City Police Dept.*, 89 NY2d 267, 277-278 [1996], *supra*).

■ Here, in light of the widespread notoriety of Mr. Garner's death and Officer Pantaleo's role therein, and the fact that hostility and threats against Officer Pantaleo have been significant enough to cause NYPD's Threat Assessment Unit to order around-the-clock police protection for him and his family, and notwithstanding the uncertainty of further harassment, we find that the gravity of the threats to Officer Pantaleo's safety nonetheless demonstrate that disclosure carries a "substantial and realistic potential" for harm, particularly in the form of "harassment and reprisals," and that nondisclosure of the requested records under Civil Rights Law § 50-a is warranted (*see Daily Gazette*, 93 NY2d at 157, 159).

The points raised in the various amici briefs can be summarized, in the main, as raising various public policy concerns. However, with all due respect to the seriousness of those concerns, we take no position on whether the statute should be amended to address those concerns. We are bound to apply the law as it exists, and as interpreted by controlling Court of Appeals precedents (*Matter of New York Civil Liberties Union v New York City Police Dept.*, 148 AD3d 642 [1st Dept 2017]). Such policy and public interest arguments have been found to be inconsistent with the legislative history of Civil Rights Law § 50-a (*see Daily Gazette*, 93 NY2d at 154-155). Petitioner's remedies, under our tripartite system of government, rest with the legislature as the policy-making branch of government, not the courts, which are tasked with interpretation of the laws.

We have considered petitioner's remaining arguments and those of the amici curiae and find them unavailing.

Accordingly, the order and judgment (one paper), of the Supreme Court, New York County (Alice Schlesinger, J.), entered July 27, 2015, directing respondent to produce to petitioner, pursuant to the Freedom of Information Law, a summary of CCRB's records indicating (a) the number of substantiated complaints brought against intervenor before the July 17, 2014 death of Eric Garner and (b) any CCRB recommendations made to the Police Department based on such complaints, should be reversed, on the law, without costs, the judgment

vacated, the petition denied, and the proceeding brought pursuant to CPLR article 78 dismissed.

ACOSTA, MOSKOWITZ, KAPNICK and KAHN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered July 27, 2015, reversed, on the law, without costs, the judgment vacated, the petition denied, and the proceeding brought pursuant to CPLR article 78 dismissed.