Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Corr. & Community Supervision (2019 NY Slip Op 03421)





Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Corr. & Community Supervision


2019 NY Slip Op 03421


Decided on May 2, 2019


Appellate Division, Third Department


Clark, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 2, 2019

526659

[*1]In the Matter of PRISONERS' LEGAL SERVICES OF NEW YORK, Appellant,
v
NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION et al., Respondents.

Calendar Date: March 28, 2019

Before: Garry, P.J., Egan Jr., Lynch, Clark and Aarons, JJ.


Debevoise & Plimpton LLP, New York City (Sean Heikkila of counsel), for appellant.
Letitia James, Attorney General, Albany (Allyson B. Levine of counsel), for respondents.



OPINION AND ORDER
Clark, J.
Appeal from a judgment of the Supreme Court (Elliott III, J.), entered October 3, 2017 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondents denying petitioner's Freedom of Information Law request for certain unredacted records.
Between February 2015 and January 2016, petitioner made Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]) requests to respondent Department of Corrections and Community Supervision (hereinafter DOCCS) seeking, among other things, unusual incident reports, use of force reports and inmate behavioral reports pertaining to certain inmates housed at DOCCS facilities. DOCCS produced most of the requested records, but redacted, among other information, the names of all correction officers referenced in the materials. Petitioner challenged the redactions by administrative appeal, prompting the office of DOCCS's counsel to review the documents provided to petitioner for any improper redactions. As a result of that review, the counsel's office provided petitioner with updated responses to its FOIL requests, which adjusted some of the redactions, but continued its redaction of the names of correction officers on the basis that the documents are "personnel records" exempt from disclosure under Public Officers Law § 87 (2) and Civil Rights Law § 50-a (1). Petitioner's subsequent administrative appeal was denied.
Petitioner thereafter commenced this CPLR article 78 proceeding seeking a determination that the redacted documents are not "personnel records" under Public Officers Law § 87 (2) and Civil Rights Law § 50-a (1) and that, therefore, they must be provided in unredacted form. Following oral argument, Supreme Court dismissed the petition, finding that the unredacted records sought by petitioner were exempt from disclosure. Petitioner now appeals.
FOIL, which was enacted "[t]o promote open government and public accountability" (Matter of Gould v New York City Police Dept., 89 NY2d 267, 274 [1996]; see Public Officers Law § 84; Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d 217, 224 [2018]), requires each government agency to "make available for public inspection and copying all [governmental] records," unless the agency can claim a specific exemption from disclosure (Public Officers Law § 87 [2]; see Matter of Friedman v Rice, 30 NY3d 461, 475 [2017]). Through its broad mandate, FOIL "affords all citizens the means to obtain information concerning the day-to-day functioning of [s]tate and local government[,] thus providing the electorate with sufficient information to 'make intelligent, informed choices with respect to both the direction and scope of governmental activities' and with an effective tool for exposing waste, negligence and abuse on the part of government officers" (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 [1986], quoting Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]). In furtherance of FOIL's legislative policy of favoring disclosure, "[e]xemptions are to be narrowly construed to provide maximum access, and the agency seeking to prevent disclosure carries the burden of demonstrating that the requested material falls squarely within a FOIL exemption by articulating a particularized and specific justification for denying access" (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d at 566; see Matter of Gould v New York City Police Dept., 89 NY2d at 275; Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Correctional Servs., 73 NY2d 26, 30 [1988]).
In opposing disclosure of the requested documents in unredacted form, respondents rely on the FOIL exemption found in Public Officers Law § 87 (2) (a), which permits an agency to "deny access to records or portions thereof" if they "are specifically exempted from disclosure by state or federal statute." The statute at issue here is Civil Rights Law § 50-a (1), which provides, in pertinent part, that "[a]ll personnel records used [by DOCCS] to evaluate performance toward continued employment or promotion . . . shall be considered confidential and not subject to inspection or review without the [correction officer's] express written consent . . . except as may be mandated by lawful court order." This case calls upon us to decide, as a matter of first impression, whether unusual incident reports, use of force reports and inmate misbehavior reports generated in the correctional facility setting qualify as "personnel records" within the meaning of Civil Rights Law § 50-a (1) and are thus exempted from disclosure under FOIL.
Civil Rights Law § 50-a "provides no definition or other language explaining or qualifying what is covered by the term 'personnel records' except that such records must be under the control of the particular agency or department and be used to evaluate performance toward continued employment or promotion" (Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Correctional Servs., 73 NY2d at 31). The Court of Appeals has, however, clarified that whether a particular document constitutes a personnel record "depends upon its nature and its use in evaluating an officer's performance," not its "physical location or its particular custodian" (Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Correctional Servs., 73 NY2d at 32). With respect to a document's use, it will not suffice for the agency or department opposing disclosure to "merely . . . demonstrate that the recorded data may be 'used to evaluate performance toward continued employment or promotion'" (Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d 145, 157 [1999], quoting Civil Rights Law § 50-a [1]).
The Court of Appeals has also indicated that the legislative purpose behind Civil Rights Law § 50-a is relevant to determining whether a specific document qualifies as a personnel record intended to be exempt from disclosure. The objective of Civil Rights Law § 50-a, as enacted and later amended, is to provide "a safeguard against potential harassment of officers through unlimited access to information contained in personnel files" (Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d at 155; see Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Correctional Servs., 73 NY2d at 31-32). Records that have no potential or a remote potential to be used to degrade, embarrass, harass or impeach the integrity of an officer do not fall within the purview of Civil Rights Law § 50-a (see Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d at 157-158). Rather, there must be a demonstrated "substantial and realistic potential" for the material to be used abusively against the officer (id. at 159).
With these overarching legal principles in mind, we first examine the nature of the documents at issue here — unusual incident reports, use of force reports and misbehavior reports. As revealed by the relevant DOCCS directive, an unusual incident report must be generated any time an "unusual incident" occurs within a DOCCS facility. An unusual incident is defined as "a serious occurrence that (1) may impact upon or disrupt facility operations, or (2) that has the potential for affecting [DOCCS's] public image, or (3) that might arouse widespread public interest" (Dept of Corr & Community Supervision Directive No. 4004). Occurrences deemed to be unusual incidents include, among other things, accidents, the possession of contraband, inmate escapes or attempted escapes, fires, destruction of property, employee misconduct, self-inflicted injuries, suicide attempts and deaths. As for use of force reports, any employee who uses physical action to resolve an incident or who has information relating to the incident must make a written report of the incident (see 7 NYCRR 251-1.3). For purposes of use of force reports, physical action includes body holds and "all instances where a baton, shield, chemical agents, mechanical restraints . . . or firearms are used" (Dept of Corr & Community Supervision Directive No. 4944). Notably, the use of physical action to resolve an incident may result in both an unusual incident report and a use of force report. Finally, with respect to inmate misbehavior reports, "[e]very incident of inmate misbehavior involving danger to life, health, security or property must be reported, in writing . . . by the employee who has observed the incident or who has ascertained the facts of the incident" (7 NYCRR 251-3.1 [a], [b]). If more than one employee has personal knowledge of the incident of inmate misbehavior, each employee must make a separate report (see 7 NYCRR 251-3.1 [b]).
As the above makes clear, unusual incident reports, use of force reports and misbehavior reports have distinct characteristics. However, they share several important commonalities. To begin with, each category of report is, at its core, a written memorialization of an event that occurred at a DOCCS facility. Additionally, and significantly, each type of report is authored, as a mandatory component of their job duties, by staff members with knowledge of the underlying event. The reports do not arise out of inmate allegations or grievances (compare Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Correctional Servs., 73 NY2d at 31-32). Nor are they written documentation of disciplinary proceedings or disciplinary action taken against a correction officer (compare Matter of New York Civ. Liberties Union v New York City Police Dept., 32 NY3d 556, 565 [2018]; Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d at 159). Given their factual nature and that each is written by a witness or witnesses with knowledge of the underlying facility event, we find unusual incident reports, use of force reports and misbehavior reports to be more akin to arrest reports, stop reports, summonses, accident reports and body-worn camera footage, none of which is quintessentially "personnel records" (see Matter of Patrolmen's Benevolent Assn. of the City of N.Y., Inc. v De Blasio, 169 AD3d 518, 519 [2019]; Matter of Green v Annucci, 59 Misc 3d 452, 454-455 [2017]).
We now turn to an examination of DOCCS's use of misbehavior reports, unusual incident reports and use of force reports. DOCCS did not develop the record regarding its use of inmate misbehavior reports; however, such reports generally serve as the basis for formal charges against an inmate in an administrative hearing (see generally 7 NYCRR 251-3.1). As for unusual incident reports and use of force reports, the relevant directives and affidavits submitted by DOCCS demonstrate that these reports are catalogued and, depending on the circumstances, possibly subjected to multiple layers of review. It is clear from the record that unusual incident reports and use of force reports can, upon review, prompt an investigation that may lead to disciplinary action or even criminal prosecution against a correction officer. For this reason, unusual incident reports and use of force reports may, in some instances, be probative of a correction officer's job performance. However, unusual incident reports and use of force reports are not solely used for such evaluative purposes; rather, they are mixed use material with various facility uses. Indeed, as revealed by the record, unusual incident reports and use of force reports are generated to, among other things, document facility occurrences, which are then catalogued, analyzed for trends and reviewed for overall quality control. Thus, while it is relevant that unusual incident reports and use of force reports may be used in employee performance evaluations, that factor alone is not determinative. Otherwise, any employee work product or [*2]record documenting an employee's on-duty actions would classify as a personnel record with the justification that it could be used to evaluate work performance and would, thus, result in a situation in which the exception swallows the rule (see Matter of Patrolmen's Benevolent Assn. of the City of N.Y., Inc. v De Blasio, 169 AD3d at 519).
Finally, with regard to the legislative objective of Civil Rights Law § 50-a, respondents have not demonstrated a "substantial and realistic potential" for the unredacted reports to be used against the officers in a harassing or abusive manner (Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d at 159). Our in camera review of a sampling of the requested documents in unredacted form reveals that the factual description of events contained in the reports was "neutral and did not contain any invidious implications capable facially of harassment or degradation of the officer in a courtroom" (Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d at 158).
Upon our review of the nature and facility uses of unusual incident reports, use of force reports and misbehavior reports, as well as their lack of potential to be used abusively against correction officers, we conclude that such documents do not qualify as personnel records within the meaning of Civil Rights Law § 50-a (see Matter of Patrolmen's Benevolent Assn. of the City of N.Y., Inc. v De Blasio, 169 AD3d at 519; Matter of Green v Annucci, 59 Misc 3d at 454-455). Accordingly, as the unredacted documents requested by petitioner are not exempt from disclosure under Public Officers Law § 87 (2), the petition should have been granted and the documents provided to petitioner in unredacted form. Although petitioner has "substantially prevailed" in this proceeding, we find that DOCCS had a "reasonable basis for denying access" to the unredacted records and that, therefore, petitioner is not entitled to an award of counsel fees and costs (Public Officers Law § 89 [4] [c]).
To the extent that we have not addressed any of petitioner's remaining contentions, they have either been rendered academic by our determination or are without merit.
Garry, P.J., Egan Jr., Lynch and Aarons, JJ., concur.
ORDERED that the judgment is reversed, on the law, without costs, and petition granted.